**Mark WEISSBAUM, Plaintiff,**

v.

**Joseph P. HANNON et al., Defendants.**

**No. 76 C 2295.**

United States District Court,
N. D. Illinois, E. D.

Sept. 26, 1977.

---

Lawrence A. Poltrock, Wayne B. Giampietro, Ligtenberg, DeJong, Poltrock & Giampietro, Chicago, Ill., for plaintiff.

Michael J. Murray, Paul H. Heineke, Chicago, Ill., for defendants.

## MEMORANDUM AND ORDER

ROBSON, Senior District Judge.

This cause is before the court on the parties' stipulation of facts, contested issues of law, and previously submitted briefs for decision on liability. For the reasons hereinafter stated, judgment shall be entered for the defendants.

## BACKGROUND

Invoking this court's jurisdiction under 28 U.S.C. § 1331 and § 1343, plaintiff, Mark Weissbaum (hereinafter Mr. Weissbaum or Weissbaum) has filed a three-count complaint against the Board of Education of the City of Chicago (hereinafter the Board); Dr. Joseph P. Hannon, General Superintendent of Schools (hereinafter Dr. Hannon or Hannon); Mr. Guy Brunetti, Assistant Superintendent, Department of Employee Relations (hereinafter Mr. Brunetti or Brunetti); Mr. Raymond C. Principe, Director, Bureau of Teacher Personnel (hereinafter Mr. Principe or Principe); Dr. Nina F. Jones, Assistant Superintendent, Department of Personnel (hereinafter Dr. Jones or Jones); Dr. Leo L. Dillon, Principal, Fenger High School (hereinafter Dr. Dillon or Dillon); Mr. Michael P. Wrenn, Director Employee Relations (hereinafter Mr. Wrenn or Wrenn); Dr. Morton L. Elenbogen, Board Examiner; (hereinafter Dr. Elenbogen or Elenbogen); and Dr. Frank W. Gardner, Board Examiner (hereinafter Dr. Gardner or Gardner). He alleges that the amount in controversy exceeds $10,000, that his first and fourteenth amendment rights were violated, and that he was deprived of his civil rights in violation of 42 U.S.C. § 1983.[1] Injunctive and monetary relief are sought in each count.

In Count I, Weissbaum makes the following allegations. He was employed by the Board as a full-time temporary teacher at Fenger High School. On or about January 26, 1976, defendants Dillon and Principe asked him to appear at the latter's office. Weissbaum appeared and was given a letter signed by defendant Jones which stated, *inter alia*, that a matter regarding his employment had been brought to the attention of the Board. *See* copy of letter *infra*. The letter directed Weissbaum to appear at the office of the Assistant Superintendent of Personnel that same day.

Immediately after receiving the letter, Weissbaum was called into a meeting at which defendants Brunetti, Principe, Jones, and Dillon were present. He was then shown copies of three pages of a certain magazine. Upon admitting that he was involved in the publication of this magazine and that his photograph appeared therein, he was dismissed from his employment. Plaintiff alleges that his dismissal was in violation of the first and fourteenth amendments to the United States Constitution.

In Count II, plaintiff alleges the same facts. He further alleges that he appealed his dismissal through the Board's grievance procedure and that defendants Wrenn, and subsequently Hannon, denied his grievance

---

1. The individual defendants are alleged to have been acting under color of law at all times relevant herein.

and affirmed the dismissal. Plaintiff alleges that the defendants' actions violated his rights to due process of law in that (1) prior to the meeting which resulted in his dismissal, he was not informed of the reason for the meeting or the charges, (2) defendants failed to present any evidence or prove any reason or cause for plaintiff's dismissal, (3) those persons who reviewed the grievance—Jones, Principe, Dillon, and Wrenn—were, for the most part, the same persons who had made the original decision to terminate plaintiff, and (4) Hannon, in denying the grievance, relied solely upon the reports of others.

In Count III, Weissbaum also premises jurisdiction upon 28 U.S.C. § 1331 and § 1343. He names as defendants the Board of Education, Hannon, and Elenbogen and Gardner, members of the Board of Examiners.

Weissbaum alleges that prior to May 19, 1976, he took and passed the examination given and authorized by defendants for certification as a permanent teacher. He further alleges that on or about May 19, 1976, defendant Gardner notified him by letter that his application was denied based upon documents submitted by the Personnel Department concerning events which ended in the termination on January 26, 1976. *See* copy of letter from Gardner *infra.*

Weissbaum alleges that this denial of certification violated his right to free speech under the first and fourteenth amendments to the United States Constitution. He further alleges that defendants violated his fourteenth amendment right to due process as (1) he was given no notice of the documents submitted to the Board of Examiners and was given no opportunity to respond thereto, (2) Hannon improperly used information gained in passing upon the prior grievance in reaching the decision to reject the application for certification as a permanent teacher, and (3) the statements contained in the letter are harmful to plaintiff;

and yet, he has been given no opportunity to respond thereto.

On December 20, 1976, in a Memorandum and Order, this court ruled on defendants' motion for summary judgment. The court granted the motion as to Count II and the fourteenth amendment due process claims of Count III. It denied, with leave to renew at a later date, the motion as to Count I and the first amendment claims of Count III. The court did not reach the first amendment issues in the December 20, 1976, opinion because it found the sequence of events preceding plaintiff's dismissal unclear. The court likewise did not determine whether the publication at issue is obscene since, at that time, it was possible that such a determination would be unnecessary.

■ On June 20, 1977, a pretrial conference was held. At that meeting, the parties agreed that the remaining issues in the case are to be decided upon the stipulation of facts received May 17, 1977, and the contested issues of law which have been filed, as well as on the briefs previously submitted in support of and in opposition to defendants' motion for summary judgment. This opinion constitutes the court's findings of fact and conclusions of law. *See* Rule 52, Fed.R.Civ.P.[2]

## STIPULATED FINDINGS AND FINDINGS OF FACT

The Board is a body politic and corporate, established pursuant to § 34–2 of the School Code, Ill.Rev.Stat. Ch. 122 § 34–2 (1975). It is charged and vested with the duty of conducting and administering the public school system of the City of Chicago. During all times pertinent herein, the eight persons named in the complaint were employees of the Board and were acting within the course and scope of their duties as such, and acting under color of the laws, ordinances, statutes, rules, customs, and practices of the State of Illinois, County of Cook, City of Chicago, and Board of Education.

2. Where a case is tried on stipulation of facts so that no genuine factual issue exists, findings of fact are not required. However, if from the stipulated facts the trier of fact could reasonably draw different inferences, then the trial court is under a duty to make findings. 5A Moore's Federal Practice, ¶ 52.08, p. 2737, n.9.

Mr. Weissbaum holds a Bachelor's degree in Education and Biology issued by Northeastern University. He also has several hours toward a Master's Degree in Biology. In late 1974, he was hired by the Board as a day-to-day substitute teacher. He was assigned to teach biology at the Curtin Branch of Fenger High School. He is nontenured.

On January 26, 1976, Dr. Hannon received a letter through the mail, attached to which were copies of three pages of a magazine entitled *Sasha's World*. One of these was page 21 on which there appears, among other things, a photograph of a man and a woman nude from the waist up. Immediately beneath this picture there is a caption which reads as follows:

No. 004C, ILLINOIS: Young, attractive couple desire serious lovers of B & D, leather, French and Greek cultures[3] to help us pursue our sociological studies. Single bi-females, couples, and largely endowed safe males preferred. No prejudices—We are an equal opportunity couple. Will travel. Must have photo, descriptive letter and SASE., Others answered as time allows.

Upon receiving the letter and attachments, and after speaking with a member of the law department of the Board, Dr. Hannon called Mr. Brunetti to his office. Dr. Hannon then asked him to determine if the gentleman pictured in one of the pages of the magazine was a school teacher in the Chicago Public School system, and if so, to terminate his services that day.

Mr. Brunetti then left Hannon's office and met with Dr. Jones and Mr. Principe in Dr. Jones' office. He instructed Dr. Jones to telephone the principal of Fenger High School, Dr. Dillon. Dr. Jones placed the call, and Dr. Dillon came to the office of the Department of Personnel of the Board. He identified plaintiff as being the male in the picture of the subject magazine.

At that point, a letter was dictated by Mr. Principe, and signed by Dr. Jones, which reads as follows:

January 26, 1976

Dear Mr. Weissbaum:

A matter regarding your employment has been brought to the attention of this office.

You are hereby directed to the Office of the Assistant Superintendent in charge of Personnel, Room 1307, 228 North La Salle, today at 3:45 p. m. to discuss this matter. You may not report to your school until you have had said conference.

Please be advised that Article 34–5.2 reads as follows:

"Teachers or other members of the bargaining unit summoned to the Office of the Assistant Superintendent for Personnel or his designee for formal action which could be adverse, shall be given advance notification as to the subject of the conference and shall have the option of having a UNION representative present. The bargaining unit member shall be responsible for notifying the UNION."

You may wish to avail yourself of the provisions of this article.

Sincerely,

Nina F. Jones

Assistant Superintendent— Personnel

At approximately 1:00 p. m., January 26, 1976, Mr. Principe telephoned Fenger High School and directed Mr. Weissbaum to be brought to the phone. When he answered the telephone, Mr. Principe identified himself, read him the letter, and asked him if he understood it. Plaintiff responded that he did.

At approximately 3:45 p. m., plaintiff arrived at the offices of the Department of Personnel of the Board. Mr. Principe met him, handed him the letter which had been previously read over the phone, and ushered him into a conference at which defendants Principe, Jones, Brunetti, and Dillon were present.

---

3. "French Culture" refers to oral-genital stimulation. "Greek Culture" involves anal-genital contact. (Defendants' Brief in Support of Motion for Summary Judgment at pp. 2–3, citing plaintiff's deposition).

Dr. Jones asked plaintiff if he were the male person in the photograph, received by Dr. Hannon, on page 21 of a copy from the magazine *Sasha's World.* Plaintiff admitted he was the male in the photograph. Plaintiff was questioned by those persons present at the conference. In response to the questions, he stated that he did not engage in the activities which were suggested in the photographs and captions in the magazine. He also stated that it was his understanding that the printer of the magazine was to have blocked out his face in the photograph. Plaintiff stated that he was part owner of the magazine, that he had invested money into it, and that he was involved with preparing, publishing, illustrating, and editing it. He said he was involved with the magazine to earn some extra funds with which to purchase a home.

Upon inquiring as to his employment status, plaintiff was informed that his services would be terminated at the close of the day. Plaintiff then stated that he had passed the certification examination for full-time teacher status and asked what effect this [4] would have upon his future status as a potential permanent teacher. He was informed by Dr. Jones that the matter was in the hands of the Board of Examiners. Plaintiff was told that his involvement in a publication such as *Sasha's World* was deemed to be conduct unbecoming a teacher in the public schools of the City of Chicago.

On January 26, 1976, the only portions of the magazine which were possessed by defendants were the three pages which Dr. Hannon had received. Up to the time that plaintiff was notified of his discharge from employment, not one of the defendants had obtained a copy of the entire magazine. At the time that plaintiff was informed of his discharge, none of the defendants had any information that the magazine had been circulated in any of the schools of the Board of Education, or that any student or faculty member of the Chicago Public School System had ever seen a copy of the magazine. One hundred to one hundred ten copies of the magazine had been sent through the United States mail and another fifty copies had been placed in a book store on the south side of Chicago for sale.

On January 26, 1976, across the front of plaintiff's personnel file, Mr. Principe wrote "Do not employ." [5] The information contained in plaintiff's personnel file is equally available to the Board of Examiners of the Board. The Department of Personnel of the Board communicated to the Board of Examiners that plaintiff had been discharged as an FTB (full-time basis). Also, copies of the three pages of the magazine at issue were delivered to the Board of Examiners. Defendants Gardner and Elenbogen reviewed them. They made a judgment that, based upon the information furnished to them by the Department of Personnel and the nature of the pictures and captions contained on the three pages of *Sasha's World,* plaintiff did not possess the character and general fitness to teach in the public schools in the City of Chicago. Consequently, on May 19, 1976, Dr. Gardner wrote plaintiff the following letter:

May 19, 1976

Dear Mr. Weissbaum:

Your application for regular certification in General Science and Biology have (sic) been denied by the Board of Examiners. The decision is based on documents submitted by the Personnel Department concerning events which ended in the termination of your services on January 26, 1976.

The State Code indicates in Section 34–83 that recommendations for certification are based on "character, scholarship, and general fitness to teach." It is on the basis of character and general fitness that your request for certification is denied. If you feel that this judgment is in

---

4. The court finds that "this" refers to plaintiff's termination of his employment.

5. On February 9, 1976, Mr. Principe also wrote plaintiff a letter in which he requested him to return a day-to-day substitute payroll book which had been inadvertently issued to him. He also informed Weissbaum that he could not be employed as a day-to-day substitute teacher.

error, you may call for an appointment with Dr. Gardner.

> Sincerely,
> Frank W. Gardner
> Secretary
> BOARD OF EXAMINERS

DECISION

The defendants assert that plaintiff's termination and the refusal to certify him did not violate his first amendment right of freedom of expression. Noting that obscenity is not protected by the first amendment, *Roth v. United States,* 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498 (1957), they contend that the magazine *Sasha's World* is obscene. In the alternative, they argue that a finding of obscenity is not required and that their action was clearly justified, considering their right and duty to pass upon plaintiff's moral qualifications to teach in the public schools. Ill.Rev.Stat. ch. 122 § 34–83.[6] Finally, defendants maintain that they are immune as they acted in good faith. *Wood v. Strickland,* 420 U.S. 308, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975).

Plaintiff concedes that if the magazine is found to be obscene, the defendants did not act improperly in terminating him or refusing to certify him. He argues that the magazine is not obscene since it does not consist of material dealing with sexual conduct, as required by Illinois law. Noting that the defendants concede that the only reason for his dismissal was his appearance and participation in the publication of *Sasha's World*, plaintiff contends that defendants have clearly violated his first amendment rights. Plaintiff further maintains that defendants have erroneously assumed that they have wide latitude to dismiss him for exercising such rights. He argues that dismissal for the exercise of first amendment rights is warranted only in specifically defined circumstances clearly not present here. *Pickering v. Board of Educ.,* 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968). Finally, plaintiff takes issue with defendants' immunity argument.

■ It is constitutionally permissible for defendants to inquire into the character and integrity of plaintiff as a teacher. *See Sullivan v. Meade Independent School Dist. No. 101,* 530 F.2d 799 (8th Cir. 1976). Weissbaum's claims under the first and fourteenth amendments, however, are not defeated by the fact that he did not have tenure. "Even though he could have been discharged for no reason whatever, and had no constitutional right to a hearing prior to the" decisions made with regard to him, he may nonetheless establish a claim if the decisions to dismiss him and not to certify him were made by reason of his exercise of constitutionally protected first amendment freedoms. *Mt. Healthy City School Dist. v. Doyle,* 429 U.S. 274, 283–84, 97 S.Ct. 568, 574, 50 L.Ed.2d 471 (1977) (citations omitted).[7]

■ While the teacher's interest as a citizen must be balanced against the legitimate interests of the state as employer, *Pickering v. Board of Educ., supra* 391 U.S. at 568, 88 S.Ct. 1731, this balancing process is subject to specific limitations. *Aumiller v. Univer-*

---

6. § 34–83 provides in pertinent part that the Board of Examiners "shall examine all applicants required to hold certificates to teach and the board of education shall issue gratuitously to those who pass a required test of character, scholarship and general fitness, such certificates to teach as they are found entitled to receive."

7. In *Mt. Healthy,* a nontenured teacher alleged that his dismissal by the school board was triggered by his exercise of first and fourteenth amendment rights. The Court established the legal principle that once a plaintiff demonstrates that his conduct is constitutionally protected and is a motivating factor in the defendants' decision to terminate him, then the de-fendants can limit the plaintiff's remedy by showing by a preponderance of the evidence that they would have reached the same decision even in the absence of the violation of the protected right. The Supreme Court vacated the judgment below and remanded the case because it could not tell what conclusion the lower courts would have reached had they applied this test. This aspect of *Mt. Healthy,* however, is not controlling here. As will be seen, plaintiff has failed to demonstrate that he was engaged in constitutionally protected conduct. Since he has failed to do so, there is no need for the burden to be shifted to the defendants.

*sity of Delaware*, 434 F.Supp. 1273 (D.Del. 1977) (J. Murray M. Schwartz) (at 1292).[8]

The parties do not dispute that the decisions to dismiss Weissbaum and to deny his application for certification were triggered by his involvement in the publication of *Sasha's World* and the appearance therein of his photograph. Accordingly, the proper framework for evaluating whether defendants' actions were improper is to determine whether Weissbaum was exercising his first amendment right of freedom of expression and, if he was, what limitations, if any, the defendants may impose on that exercise.[9] As the parties recognize, whether Weissbaum was exercising a first amendment right depends upon whether the magazine *Sasha's World*, taken as a whole, is obscene.

In *Roth v. United States*, 354 U.S. 476, 485, 77 S.Ct. 1304, 1309, 1 L.Ed.2d 1498 (1957), the United States Supreme Court held that "obscenity is not within the area of constitutionally protected speech or press." This holding was reaffirmed in *Miller v. California*, 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973), where the Court also articulated the basic guidelines for determining whether material is obscene:

> The basic guidelines for the trier of fact must be: (a) whether the "average person, applying contemporary community standards" would find that the work, taken as a whole, appeals to the prurient interest . . . ; (b) whether the work depicts or describes, in a patently offensive way, sexual conduct specifically defined by the applicable state law; and (c) whether the work, taken as a whole, lacks serious literary, artistic, political or

scientific value. *Id.* at 24, 93 S.Ct. at 2615. (citations omitted).

The Illinois obscenity statute, Ill.Rev. Stat. ch. 38, § 11–20, has been construed to incorporate parts (a) and (b) of the *Miller* standards set forth above, but to retain the "utterly without redeeming social value" test of *Memoirs v. Massachusetts*, 383 U.S. 413, 86 S.Ct. 975, 16 L.Ed.2d 1 (1966), in preference to the more relaxed standard contained in part (c) of the *Miller* guidelines. *People v. Ridens*, 59 Ill.2d 362, 321 N.E.2d 264 (1974). *See also Ward v. State of Illinois*, 431 U.S. 767, 97 S.Ct. 2085, 52 L.Ed.2d 738 (1977).[10]

As indicated, plaintiff concedes that if *Sasha's World* is determined to be obscene, his dismissal was not in violation of his first amendment right of free expression. However, plaintiff argues that defendants have done nothing to demonstrate that the magazine is in fact obscene, except to point with alarm and to use intemperate language.

■ The court disagrees and concludes that defendants have demonstrated that the magazine is obscene. They have furnished the court with a copy of *Sasha's World*. It is obviously the best evidence of what it represents. *Paris Adult Theatres I. v. Slaton*, 413 U.S. 49, 56, 93 S.Ct. 2628, 37 L.Ed.2d 446 (1973). It speaks for itself and it is sufficient for the determination of the obscenity issue. *Id.*

■ *Sasha's World* is primarily designed for people with a preference for bondage and discipline and sado-masochism. Such materials may be obscene and therefore proscribed by state law. *Mishkin v. New*

8. The case has been reported in the July 12, 1977, issue of U.S.L.W. at 46 L.W. 1005, 2018–19.

9. In establishing a framework to evaluate whether the defendants' actions were improper, the court has taken into account the contested issues of law which were filed by the parties in the pretrial order (received on May 17, 1977), as well as the so-called revised contested issues of law filed on June 20, 1977.

10. *But see People v. Glass*, 41 Ill.App.3d 43, 353 N.E. 214 (1st Dist.1976) and *United States v. Miscellaneous Pornographic Mag.*, 400 F.Supp.

353 (N.D.Ill.1975), which appear to have applied part (c) of the *Miller* guidelines rather than the *Memoirs* test. This apparent conflict may be reconcilable. Illinois cases in which the *Memoirs* test was applied have involved obscenity determinations which were made prior to the decision in *Miller v. California*, 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973), whereas the obscenity determinations in *Glass* and *Miscellaneous Pornographic Mag.* were made subsequent to the *Miller* decision. In any event, the court will employ both the *Memoirs* "utterly without redeeming social value" test and part (c) of the *Miller* guidelines.

*York,* 383 U.S. 502, 86 S.Ct. 958, 16 L.Ed.2d 56 (1966).[11] *Sasha's World* contains, among other things, the following: (1) photographs and drawings of naked persons, many of whom are shown being whipped, bonded, and otherwise abused; (2) suggestive photographs of models—usually women who are naked or clad only in leather, chastity belts, or boots—accompanied by advertisements and invitations to engage in a variety of sexual conduct which, although sometimes phrased euphemistically, includes sado-masochistic acts, bondage and discipline, whipping, intercourse, lesbianism, homosexuality, group sex, oral-genital stimulation, and anal-genital stimulation; (3) some photographs and drawings focussing on the genitals; (4) numerous advertisements and an order-form for leather and bondage paraphernalia such as "Silver Spoon Cock Rings," "Deluxe Humiliation Collar," "Bondage Collar," "Little Bitch," and so forth; and (5) an "article" entitled "The Secret Garden" which depicts in detail the initiation of a fifteen year old boy and a twelve year old girl into the ways of sex, whipping, bondage and discipline, and sado-masochism. *Sasha's World* is cheaply prepared, held together with staples, and costs $4.00. On the front and rear covers of the magazine there is a statement which reads "sale to minors prohibited."

■ Plaintiff's argument that the conduct described in *People v. Glass,* 41 Ill. App.3d 43, 353 N.E.2d 214 (1st Dist.1976), does not fit the magazine *Sasha's World* is misguided. The conduct described in that case is not intended to be exhaustive. The language is explicit that the sexual acts enumerated are offered merely as examples of what is obscene: "[publications] which depict actual or imminent sex acts such as intercourse, fellatio, cunnilingus and masturbation are obscene and not protected by

the Constitution." *Id.* at 51 and at 220. Clearly, this language does not preclude publications which depict other sexual acts, such as sado-masochism, from being found obscene. *See also Ward v. State of Illinois, supra* 97 S.Ct. at 2089.

■ Plaintiff's statement that *Sasha's World* contains no *photographs* which either focus on the exposed genital areas or depict actual or imminent sexual acts is not only inaccurate but also misleading. Admittedly, there is a great deal of nudity in the magazine, and nudity alone is not enough to make material obscene. *People v. Taylor,* 35 Ill.App.3d 418, 421, 342 N.E.2d 96, 98 (1st Dist.1976). The Illinois Supreme Court and Illinois appellate courts have repeatedly held, however, that *pictorial* or *written* portrayals are obscene if there are accompanying indications of imminent and impending sexual activity. *Id. Sasha's World* contains photographs which focus attention on the genitals and which portray, among other things, flagellation. Moreover, there are drawings which focus on the exposed genital areas and which portray sado-masochistic acts. Finally, many of the nude photographs and drawings, as well as the article, contain accompanying indications of imminent and impending sexual activity.

■ In sum, the court has no hesitation in finding that, under both the *Miller* guidelines and the *Memoirs* test,[12] *Sasha's World* is in fact obscene. It finds that the average person applying contemporary community standards would find that the work, taken as a whole, appeals solely to the prurient interest. The dominant theme of the magazine is a morbid interest in nudity, sex, bondage and discipline, and sado-masochism. In addition, the court finds that the magazine depicts sexual conduct in a patently offensive way, as defined by the Illi-

---

11. As recently as June the Supreme Court held that sado-masochistic materials are the kind of materials that may be proscribed by state law, even though they were "not expressly included within the examples of the kinds of sexually explicit representations that *Miller* used to explicate the aspect of its obscenity definition dealing with patently offensive depictions of

specifically defined sexual conduct." *Ward v. State of Illinois,* 431 U.S. 767, 97 S.Ct. 2085, 2089, 52 L.Ed.2d 738 (1977).

12. The court is applying both the *Miller* and *Memoirs* standards for the reasons stated in note 10, *supra. See also* the text relating to note 10, *supra.*

nois obscenity statute and construed by the Illinois courts. The court further finds that the magazine is utterly without redeeming social value and that the work, taken as a whole, lacks serious literary, artistic, political, or scientific value.

CONCLUSION

Weissbaum's free speech claims under the first and fourteenth amendments, as well as under 42 U.S.C. § 1983, are not defeated by the fact that he did not have tenure. His public employment cannot be denied in retaliation for the exercise of first amendment rights. *Mt. Healthy City School Dist. v. Doyle, supra; Perry v. Sinderman*, 408 U.S. 593, 597, 92 S.Ct. 2513, 33 L.Ed.2d 570 (1972). Nonetheless, the court has determined that plaintiff was not exercising a constitutionally protected first amendment right, as it finds the magazine *Sasha's World* is obscene. Accordingly, Count I and the first amendment claims of Count III are dismissed.[13]

Since the court has determined that plaintiff was not exercising a protected first amendment right, it need not determine the second question: what limitations, if any, defendants may impose on plaintiff's exercise of that right. In addition, the court need not reach the immunity arguments which have been raised by the parties.

For the persons stated, it is therefore ordered that judgment shall be, and the same is hereby, entered in favor of the defendants.

It is further ordered that this action shall be, and the same is hereby, dismissed.

---

**13.** Of course, plaintiff's section 1983 claim must be dismissed because he has not suffered any "right, privilege, or immunity secured by the Constitution and laws of the United States." *Brainerd v. Potratz*, 421 F.Supp. 836, 840 (N.D.Ill.1976). As indicated *supra*, the claims raised in Count II and the due process claims of Count III were dismissed in this court's Memorandum and Order of December 20, 1976.