Frank TUROSO, Petitioner,

v.

The CLEVELAND MUNICIPAL
COURT, et al.

No. C79–1010.

United States District Court,
N. D. Ohio.

Sept. 15, 1980.

Bernard A. Berkman, Berkman, Gordon, Kancelbaum, Levy & Murray, Cleveland, Ohio, for petitioner.

Bruce A. Taylor, Bertsch, Fludine, Millican & O'Malley Co., L.P.A. Cleveland, Ohio, David E. Stocker, Asst. Atty. Gen., Columbus, Ohio, for defendant.

## MEMORANDUM AND ORDER

WILLIAM K. THOMAS, District Judge.

Challenging his conviction by a Cleveland Municipal Court jury for pandering obscenity (O.R.C. § 2907.32(A)(2)) and his consequent sentence, Frank Turoso petitions this court for a writ of habeas corpus (28 U.S.C. § 2254). Petitioner contends that he was convicted and sentenced in violation of his First and Fourteenth Amendment rights. He says that O.R.C. § 2907.32(A) and § 2907.01 (which defines obscenity and therefore must be read with the former section) are unconstitutionally vague and overbroad.

Convicted on April 29, 1977, Frank Turoso was sentenced to six months in jail and fined $1,000. The Ohio Court of Appeals (Eighth District) affirmed that conviction on April 26, 1979. Petitioner did not appeal his conviction to the Ohio Supreme Court. Instead, he filed his habeas corpus petition in this court.

Magistrate Streepy, to whom the case was referred for a report and recommended decision, concluded:

It is arguable that [the R.C. 2907.01] definition of sexual conduct, considered in combination with the element of "patently offensive" in part (b) of the [*Miller v.*

*California,* 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973)] guidelines, comes within the examples of "hardcore" sexual conduct set forth in *Miller,* at p. 25, [93 S.Ct. at p. 2615] which the state may constitutionally regulate.

Nevertheless, the magistrate recommended that the petition for a writ of habeas corpus be granted on the following ground:

> The court in petitioner's case did instruct the jury in the language of the three-part *Miller* standard; but did not specifically define "sexual conduct" in part (b) of the standard pursuant to the applicable state law. Thus the court did not define sexual conduct in terms of the two examples in *Miller,* at p. 25, [93 S.Ct. at p. 2615] nor did the court define sexual conduct as it appears in Ohio Revised Code § 2907.-01(A). Since the court instructions did not define the sexual conduct to be restricted with the requisite specificity, the instructions were unconstitutionally overbroad. *Sovereign News Co.* [*v. Falke*] [448 F.Supp. 306, 400 (N.D.Ohio 1977, Manos, J.)]

The subjects of the two recommended rulings of the magistrate will be covered in the memorandum of this court. The first recommended ruling need not be discussed because this court hereafter concludes that the Ohio obscenity law is constitutional as construed by the Ohio Supreme Court in light of *Miller v. California,* 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973), and *Ward v. Illinois,* 431 U.S. 767, 97 S.Ct. 2085, 52 L.Ed.2d 738 (1977). The second recommended ruling of the magistrate, not adopted by this court, will be discussed.

### I.

#### A.

■ Two jurisdictional issues are raised by this habeas corpus petition. First, since the petitioner has not yet begun to serve the sentence of six months or pay the $1,000 fine imposed upon him, is he "in custody" within the meaning of 28 U.S.C. § 2254? An entry in the case transcript reads:

> Mandate received from Court of Appeals. Judgment affirmed. Sentence stayed.

Same bond. [$5,000 surety bond] pending resolution of habeas corpus in U.S. District Court.

*Hensley v. Municipal Court,* 411 U.S. 345, 93 S.Ct. 1571, 36 L.Ed.2d 294 (1973), held that a person released on bond (personal recognizance in *Hensley*) is in "custody" within the meaning of the federal habeas corpus statute, 28 U.S.C. §§ 2241(c)(3), 2254(a). But for the staying of the sentence by the state court, and his continued release on surety bond, the petitioner would be serving the Cleveland Municipal Court's sentence. Hence, under *Hensley,* he is "in custody."

However, *Hensley* emphasizes that a state defendant "released on bail or on his own recognizance pending trial or pending appeal ... must still contend with the requirements of the exhaustion doctrine if he seeks habeas corpus relief in the federal courts." This raises a second jurisdictional question.

While 28 U.S.C. § 2254(b), (c) provides that a petition for writ of habeas corpus by a person in state custody will not be granted unless state court remedies have been exhausted, *Lucas v. People of State of Michigan,* 420 F.2d 259, 261 (6th Cir. 1970), recognizes that "the exhaustion requirement is not absolute." When a state court's rulings are settled and there is no reason to believe that a state's appellate courts are prepared to depart from those rulings, *Lucas* holds that "to require [a petitioner] to exhaust [the] remedies in the State courts would be an exercise in futility." *Rachel v. Bordenkircher,* 590 F.2d 200, 204 (6th Cir. 1978), approved and followed *Lucas.*

■ In *State v. Thomas,* 57 Ohio St.2d 71, 387 N.E.2d 229 (1979), a *per curiam* opinion, the Supreme Court of Ohio reviewed the Akron Municipal Court's dismissal of a pandering obscenity (R.C. 2907.32) charge. The dismissal had been affirmed by the Summit County Court of Appeals on the ground that R.C. 2907.32 and 2907.01(F) (defining obscenity) are "unconstitutionally overbroad and vague." In reversing the court of appeals "on the authority of and for the reasons stated in *State v. Burgun,* 56 Ohio

St.2d 354, 384 N.E.2d 255 (1978)," the Ohio Supreme Court reaffirmed the ruling that R.C. 2907.01(F) "is neither unconstitutionally overbroad nor void for vagueness when it is authoritatively construed to incorporate the guidelines prescribed in *Miller v. California*, 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed. 419 (1973)." Thus, to require petitioner to exhaust his remedies through the Ohio Supreme Court when its adjudication of constitutionality is predictable would be the "judicial runaround" which *Lucas* finds to be futile and unnecessary.

## B.

*Miller v. California* formulated three "basic guidelines for the trier of fact," and the statement of these guidelines in the conjunctive requires each to be established:

(a) whether "the average person, applying contemporary cards" would find that the work, taken as a whole, appeals to the prurient interest, *Kois v. Wisconsin, supra*, [408 U.S. 229] at 230 [92 S.Ct. 2245, at 2246, 33 L.Ed.2d 312], quoting *Roth v. United States, supra*, [354 U.S. 476] at 489 [77 S.Ct. 1304, at 1311, 1 L.Ed.2d 1498]; (b) whether the work depicts or describes, in a patently offensive way, sexual conduct specifically defined by the applicable state law; and (c) whether the work, taken as a whole, lacks serious literary, artistic, political, or scientific value.

*Id.*, 413 U.S. at 24, 93 S.Ct. at 2615.

Preliminary to the formulation of the guidelines, the Court had stated:

We acknowledge . . . the inherent dangers of undertaking to regulate any form of expression. State statutes designed to regulate obscene materials must be carefully limited . . . As a result, we now confine the permissible scope of such regulation to works which depict or describe sexual conduct. That conduct must be specifically defined by the applicable state law, as written or authoritatively construed.

*Id.*, at 24, 93 S.Ct. at 2615.

The Court elaborated upon part (b) of the guidelines by giving examples of sexual conduct, the depictions of which could be defined and regulated by a state:

(a) Patently offensive representations or descriptions of ultimate sexual acts, normal or perverted, actual or simulated.

(b) Patently offensive representations or descriptions of masturbation, excretory functions, and lewd exhibition of genitals.

*Id.*, at 25, 93 S.Ct. at 2615. The Court was careful to point out that "[w]e do not hold . . . that all States . . . must now enact new obscenity statutes. Other existing state statutes, as construed heretofore or hereafter, may well be adequate." *Id.*, at 24, n.6, 93 S.Ct. at 2615, n.6. Allowance was made, indeed permission was given, for state courts to "authoritatively construe" their obscenity statutes to bring those statutes into conformance with *Miller.*

The Court ruled:

If a state law that regulates obscene material is thus limited, as written or construed, the First Amendment values applicable to the States through the Fourteenth Amendment are adequately protected by the ultimate power of appellate courts to conduct an independent review of constitutional claims when necessary (citations).

*Id.*, at 25, 93 S.Ct. at 2615.

In *Ward v. Illinois*, 431 U.S. 767, 97 S.Ct. 2085, 52 L.Ed.2d 738 (1977), the Court was faced with a pre-*Miller* statute. Ill.Rev. Stat. ch. 38, § 11–20(b) thus defined obscenity: "A thing is obscene if, considered as a whole, its predominant appeal is to prurient interest, that is, a shameful or morbid interest in nudity, sex, or excretion, and if it goes substantially beyond customary limits of candor in description or representation of such matters. . . ." It was argued in *Ward* that the statute was unconstitutionally vague because it failed to specifically define the sexual conduct which could not be "depicted in a patently offensive way."

The argument was rejected on several grounds. In cited decisions of the Illinois Supreme Court that predated the sales for which Ward was prosecuted, the Court noted that "[m]aterials such as [Ward sold],

which by title or content may fairly be described as sado-masochistic, had been expressly held to violate the Illinois [obscenity] statute. . . ." *Id.*, at 771, 97 S.Ct. at 2088. Thus there was "notice that materials dealing with the kind of sexual conduct involved [in *Ward*] could not be legally sold in [Illinois]."

In a case remanded under *Miller, People v. Ridens*, 59 Ill.2d 362, 321 N.E.2d 264, 270 (1974), the Illinois Supreme Court construed section 11–20 "to incorporate parts (a) and (b) of the *Miller* standards." In *Ridens*, the court neither expressly adopted nor set forth the *Miller* "examples."

By the Illinois court's incorporating part (b) of the *Miller* guidelines into the Illinois statute, the Court reasoned that,

> The Illinois court thus must have been aware of the need for specificity and of the Miller Court's examples explaining the reach of part (b). See *id.*, 413 U.S. at 25, 93 S.Ct. at 2615.

Since the "Illinois court plainly intended to conform the Illinois law to part (b) of *Miller*," the Court concluded, "[T]here is no reason to doubt that, in incorporating the guideline as part of the law, the Illinois court intended as well to adopt the *Miller* examples, which gave substantive meaning to part (b) by indicating the kinds of materials within its reach." *Ward, supra*, 431 U.S. at 775, 97 S.Ct. at 2090. The Court then added:

> The alternative reading of the decision would lead us to the untenable conclusion that the Illinois Supreme Court chose to create a fatal flaw in its statute by refusing to take cognizance of the specificity requirement set down in *Miller.*

*Id.*, at 775, 97 S.Ct. at 2090. Thus, the Court held that the incorporation of part (b) of the *Miller* guidelines impliedly incorporated the *Miller* patently offensive "examples" into the Illinois obscenity law. However, these "specifics were offered merely as 'examples,'" 413 U.S. at 25, 93 S.Ct. at 2615; and as later pointed out in *Hamling v. United States*, 418 U.S. 87, 114, 94 S.Ct. 2887, 2906, 41 L.Ed.2d 590 (1974), they "were not intended to be exhaustive."

The conclusions of the Court in *Ward* are no less an independent ground of decision because the Court thereafter found reinforcement for these conclusions in the later Illinois decision of *People v. Gould*, 60 Ill.2d 159, 324 N.E.2d 412 (1975). The Court noted that *Gould* quoted a passage from *Miller* which "contains the explanatory samples as well as the guidelines" and that *Gould* then stated that "*Ridens* had construed the Illinois statute to include parts (a) and (b) of the *Miller* guidelines, and it expressly referred to the standards set out in the immediately preceding quotation from *Miller.*" The Court then held:

> Because the quotation contained not only part (b) but the examples given to explain that part, it would be a needlessly technical and wholly unwarranted reading of the Illinois opinions to conclude that the state court did not adopt these explanatory examples as well as the guidelines themselves.

431 U.S. at 775–76, 97 S.Ct. at 2090–91. The Court further held:

> Given that Illinois has adopted *Miller*'s explanatory examples, what the State has done in attempting to bring its statute in conformity with *Miller* is surely as much as this Court did in its post-*Miller* construction of federal obscenity statutes. In *Hamling v. United States*, 418 U.S. at 114, [94 S.Ct. at 2906] we construed 18 U.S.C. § 1461, which prohibits the mailing of obscene matter, to be limited to "the sort of" patently offensive representations or descriptions of that specific hardcore sexual conduct given as examples in *Miller.*

*Id.*, at 776, 97 S.Ct. at 2091.

Hence, the question of meeting the constitutional statutory specificity requirement depends upon whether the Ohio statute, section 2907.01(F), has been authoritatively construed by the Ohio courts to incorporate the *Miller* three-part guidelines and if so, whether the incorporation of the *Miller* examples may be implied therefrom.

### C.

O.R.C. 2907.01(F) thus defines "obscene":

(F) When considered as a whole, and judged with reference to ordinary adults, or, if it is designed for sexual deviates or other specially susceptible group, judged with reference to such group, any material or performance is "obscene" if any of the following apply:

(1) Its dominant appeal is to prurient interest;

(2) Its dominant tendency is to arouse lust by displaying or depicting sexual activity, masturbation, sexual excitement, or nudity in a way which tends to represent human beings as mere objects of sexual appetite;

(3) Its dominant tendency is to arouse lust by displaying or depicting bestiality or extreme or bizarre violence, cruelty, or brutality;

(4) Its dominant tendency is to appeal to scatological interest by displaying or depicting human bodily functions of elimination in a way which inspires disgust or revulsion in persons with ordinary sensibilities, without serving any genuine scientific, educational, sociological, moral, or artistic purpose;

(5) It contains a series of displays or descriptions of sexual activity, masturbation, sexual excitement, nudity, bestiality, extreme or bizarre violence, cruelty, or brutality, or human bodily functions of elimination, the cumulative effect of which is a dominant tendency to appeal to prurient or scatological interest, when the appeal to such interest is primarily for its own sake or for commercial exploitation, rather than primarily for a genuine scientific, educational, sociological, moral, or artistic purpose.

The petitioner has not filed any comment on the magistrate's recommended report. However, the petitioner argues in his writ-

ten submission to the magistrate that the section 2907.01(F) definition of obscenity is unconstitutionally overbroad and vague because it does not comply with the standard articulated by the Supreme Court in *Miller v. California*, 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973). He argues that the statute is written in the disjunctive rather than the conjunctive, allowing for prosecution upon the finding of any one of the five characteristics listed within section 2907.-01(F). He further argues that depictions proscribed by section 2907.01(F) include violence and mere nudity, both of which are protected.[1] Finally, petitioner claimed that the statute does not define with the requisite specificity the sexual conduct which may not be depicted because it is patently offensive.

Respondents Cleveland Municipal Court and the Honorable Salvatore R. Calandra have filed objections to the report of the magistrate. In sum, they argue that the Ohio Supreme Court has construed the Ohio obscenity law to incorporate the *Miller* guidelines and that necessarily the incorporation includes the *Miller* examples of patently offensive sexual conduct. Since such incorporation was presumed by the United States Supreme Court in upholding the Illinois obscenity law in *Ward v. Illinois*, 431 U.S. 767, 97 S.Ct. 2085, 52 L.Ed.2d 738 (1977), the same presumption of incorporation of the *Miller* "examples" sustains the Ohio obscenity law against petitioner's attack, it is urged.

In *State v. Burgun*, 56 Ohio St.2d 354, 384 N.E.2d 255 (1978), the Ohio Supreme Court had before it appeals of four persons, each convicted by a jury in Cleveland Municipal Court of pandering obscenity in violation of O.R.C. 2907.32(A)(4).[2] The defendants were cashiers or clerks in adult bookstores located in Cleveland. In each situation police

---

1. In *Jenkins v. Georgia*, 418 U.S. 153, 161, 94 S.Ct. 2750, 2755, 41 L.Ed.2d 642 (1973), the Court stated, "[N]udity alone is not enough to make material legally obscene under the *Miller* standards."

2. O.R.C. 2907.32(A)(4), in pertinent part provides:

(A) No persons with knowledge of the character of the material or performance involved, shall do any of the following:

\* \* \* \* \* \*

(4) Advertise an obscene performance for presentation, or present or participate in presenting an obscene performance, when such performance is presented publicly, or when admission is charged. . . .

viewed movies in coin operated projectors located in booths at the rear of the premises. Later, pursuant to search warrants, the movies were seized, admitted into evidence, and viewed by the jury.

Each appellant charged that the definition of obscenity, which must be read together with R.C. 2907.32(A)(4), is

overbroad "on its face" because an item can be considered "obscene" if *any* of the characteristics outlined in subsections (1) through (5) are present. [*Supra*, at p. 833.] Since the statute is written in disjunctive rather than conjunctive language, it is alleged that a conviction can be obtained without a finding that the *tripartite* test in *Miller v. California* (1973), 413 U.S. 15, [93 S.Ct. 2609, 37 L.Ed.2d 419] has been satisfied.[3]

The *Burgun* court's familiarity with the *Miller* guidelines is revealed in its quotation of those guidelines. The court's familiarity with the *Miller* "examples" must be inferred also from the fact that the court refers to 413 U.S. at p. 25, 93 S.Ct. at p. 2615 of the *Miller* opinion (on which page the *Miller* "examples" are set forth). The court stated:

In that case, the United States Supreme Court, at pp. 24–25, [93 S.Ct. at pp. 2614–15, described the permissible scope of state regulation of obscenity and the three-prong inquiry to be adopted by the

trier of fact as follows: [guidelines thereupon quoted].

56 Ohio St.2d at 357–58, 384 N.E.2d at 259.

As prologue to the court's statement of its intention to read the *Miller* guidelines in *pari materia* with section 2907.01(F), the court next stated:

In summary, appellants allege in effect that the statute not only has not been "limited, as written," in light of the *Miller* guidelines but also is incapable of a "narrowing *construction*" in conformity with that decision. We disagree.

The United States Supreme Court did not intend for every state legislature to rewrite its obscenity statutes as a result of the *Miller* decision. As indicated, an "authoritative construction of applicable state law limiting the regulation of obscenity by the guidelines in that decision would be constitutionally sufficient."

*Id.*, 56 Ohio St.2d at 358, 384 N.E.2d at 259.

The Ohio Supreme Court then noted that following the *Miller* mandate it "was faced with a construction of the predecessors to the statutes under attack in the present case, R.C. 2905.34 and 2905.35,[4] immediately following the *Miller* decision in *State, ex rel. Sensenbrenner, v. The Book Store*, (1973), 35 Ohio St.2d 220, [301 N.E.2d 695] and *State, ex rel. Keating, v. Vixen*, (1973), 35 Ohio St.2d 215 [301 N.E.2d 880]." Re-

---

3. 56 Ohio St.2d at p. 358, 384 N.E.2d 255, the court extends appellants' criticism of section 2907.01(F):

In addition to the criticism that subsections (1) through (5) do not facially incorporate the three-part *Miller* test, the appellants have asserted other instances where the statute conflicts with that decision. It is argued that subsection (3) unconstitutionally restricts the depiction of extreme violence when only material depicting or describing sexual conduct may be limited as being obscene. In addition, appellants argue that subsections (1), (2), (3), and (5) are facially overbroad because acts of " 'simple nudity' " as opposed to hard core pornography can also be considered to be " 'obscene'." Likewise, what is meant by material whose " 'dominant appeal is to prurient interest' " is cited as a further example of unconstitutional overbreadth. Finally it is argued that the general lack of specificity found in R.C. 2907.01(F) warrants not only a finding of unconstitutional over-

breadth but also a determination that the entire statute is void for vagueness.

In *Sovereign News Company v. Falke*, 448 F.Supp. 306, 400 (N.D.Ohio 1977, Manos, J.), the court found that in four separate instances, "section 2907.01 defines 'obscenity' in a manner that restricts constitutionally protected expression." These instances are the same as the foregoing challenges to section 2907.01(F).

4. Effective January 1, 1974, Ohio adopted a new criminal code including a rewriting of its obscenity laws. The predecessor section O.R.C. 2905.34(A) was substantially readopted, but one subparagraph, as O.R.C. 2907.01(F), was added. Thus for present purposes, the predecessor definition of obscenity, O.R.C. 2905.34, and the present definition of obscenity, O.R.C. 2907.01(F), have substantially the same wording. Both are written in disjunctive rather than conjunctive language.

viewing those decisions, the court observed that in *Vixen* at p. 219, 301 N.E.2d 880 it had held "that the statutory definitions 'comport with the standards enunciated in *Miller*'" and that similar language was found in *Sensenbrenner* 35 Ohio St.2d at p. 221, 301 N.E.2d 695 where it indicated:

> It is apparent that, if these causes were remanded to the Court of Common Pleas, the trier of the facts, given the standards expressed in *Miller* and the provisions of R.C. 2905.34 as guides for determining the issue of obscenity, could come to no other conclusion than the one reached in the first instance.

*Id.*, 56 Ohio St.2d at 358, 384 N.E.2d at 260.

Continuing, the court observed that "[t]he application of the *Miller* guidelines to Ohio's obscenity law was also noted by this court in *State, ex rel. Ewing, v. Without a Stitch* (1974), 37 Ohio St.2d 95 [307 N.E.2d 911]." The court then held:

> The essence of these three Ohio decisions was *not* that the wording of R.C. 2905.-34(A)(1) through (4) *visibly,* literally, or *facially* incorporated the tripartite *Miller* test in *each* of those *subsections.* What this court attempted to spell out was that the wording of the entire statute, when construed *in pari materia* with the *Miller* decision, adequately protected the First Amendment values applicable to the states through the Fourteenth Amendment. R.C. 2905.34 contains the same *disjunctive* language currently under attack as well as being more general in its terms and definitions than its successor, R.C. 2907.01(F).

*Id.*, 56 Ohio St.2d at 360, 384 N.E.2d at 260. Citing *Ward v. Illinois*, 431 U.S. 767, 97 S.Ct. 2085, 52 L.Ed.2d 738 (1977), the Ohio Supreme Court correctly characterized that case as a reinforcement of the United States Supreme Court policy "of upholding facially overbroad state obscenity statutes that have been 'narrowed' by an 'authoritative construction' in light of the *Miller* guidelines."

Before considering whether Ohio has incorporated the *Miller* guidelines in accordance with *Ward v. Illinois,* an earlier aspect of the *Ward* decision is pertinent here and should be mentioned. *Ward v. Illinois* noted that by virtue of earlier Illinois Supreme Court decisions, "appellant had ample guidance from the Illinois Supreme Court that his conduct did not conform to the Illinois law." *Id.,* at 771, 97 S.Ct. at 2088. Although the reference was to movies rather than magazines (a distinction without a difference), in *State, ex rel. Keating, v. Vixen,* 27 Ohio St.2d 278, 285, 272 N.E.2d 137, 141–42 (1971) (*Vixen I*), the Ohio Supreme Court announced:

> Doubt can no longer remain that the depiction of purported acts of sexual intercourse on the movie screen and the public exhibition thereof "for commercial exploitation rather than for a genuine, scientific, educational, sociological, moral, or artistic purpose" is forbidden by Ohio law.

On remand by the Supreme Court of the United States of the same case for further consideration in light of *Miller v. California,* the court in *State, ex rel. Keating, v. "Vixen",* 35 Ohio St.2d 215, 218, 301 N.E.2d 880, 882 (1973) (*Vixen II*), repeated and approved the last quoted statement.

With express notice that "depiction of purported acts of sexual intercourse on the movie screen and the public exhibition thereof . . . is forbidden by Ohio law," and given the content of the magazine "Sexual Fantasies," described *infra* in part II, petitioner Turoso had full and direct notice that the commercial exploitation of the depictions of sexual acts contained in such magazines is likewise "forbidden by Ohio law."

To return to the matter of the incorporation of the *Miller* guidelines in the Ohio obscenity law, the Ohio Supreme Court noted what happened in *Ward v. Illinois:*

> The United States Supreme Court pointed out that subsequent to the *Miller* decision, Illinois Supreme Court decisions had proceeded to "construe" section 11–20 of their Criminal Code to "incorporate" the guidelines in that decision. *Id.,* [431 U.S.] at 774–75 [97 S.Ct. at 2089–90]. As a result of that state Supreme Court's

"response to *Miller*," the court indicated, at p. 776 [97 S.Ct. at 2091] that it would not hold the Illinois statute to be "unconstitutionally overbroad."

*Id.*, 56 Ohio St.2d at 361, 384 N.E.2d at 260–61. After observing that it had followed "a somewhat similar 'response to *Miller*' in its construction of R.C. 2905.34" in *Vixen* and *Sensenbrenner* the court stated, "Today, that 'response' continues with a further clarification by the interpretation and application of its successor, R.C. 2907.-01(F)." The Ohio Supreme Court then held:

R.C. 2907.01(F) is neither unconstitutionally overbroad nor void for vagueness when it is read *in pari materia* with the *Miller* decision. The *Miller* test for defining obscenity is therefore incorporated into that statute by an "authoritative" state court construction specifically sanctioned by *Miller*. In addition, a close reading of R.C. 2907.01 in its entirety shows that the statute is not vague but rather extremely precise in defining what conduct is prohibited. Thus, since the current statutory definition has been effectively narrowed to constitutionally permitted parameters, the appellants' proposition of law has no merit.

*Id.*, 56 Ohio St.2d at 361, 384 N.E.2d at 261.

Thus it is seen that the Ohio Supreme Court has incorporated the *Miller* guidelines into O.R.C. 2907.01(F) "by an 'authoritative' state court construction." As seen earlier, in *State v. Thomas*, the Ohio Supreme Court reaffirmed its *Burgun* ruling which incorporated the *Miller* guidelines in O.R.C. 2907.01(F).

In *State v. Vixen*, (*Vixen II*), the opinion of the Ohio Supreme Court quoted the *Miller* "examples" as well as the *Miller* guidelines. *Burgun* approved *State v. Vixen*. Further, the Ohio Supreme Court demonstrated its acquaintanceship with the *Miller* "examples" by its reference to 413 U.S. at p. 25, 93 S.Ct. at p. 2615 of *Miller* containing these examples. Applying the teachings of *Ward v. Illinois*, it is concluded that by expressly incorporating the *Miller* guidelines into O.R.C. 2907.01(F) with full knowl-

edge of the *Miller* "examples," the Ohio Supreme Court has impliedly incorporated the *Miller* "examples" as well.

In *Sovereign News Co. v. Falke, supra,* Judge Manos declared O.R.C. 2907.01 and 2907.32 "unconstitutionally overbroad on their face;" he further declared O.R.C. 2907.01(F) "unconstitutionally vague." Thereafter, the court of appeals remanded the consolidated cases "to the district court for further consideration in the light of the decision of the Supreme Court of Ohio in *State of Ohio v. Burgun.*" *Sovereign News Company v. Corrigan*, 610 F.2d 428 (6th Cir. 1978). Without reference to what Judge Manos may decide on such remand, this court has the independent responsibility to decide the instant habeas corpus petition in light of the applicable and controlling law including *Burgun, Miller*, and *Ward v. Illinois*.

Judge Manos concluded that "[o]n the question of whether an Ohio court can put an authoritative gloss on § 2907.01 thereby making it constitutional, the court finds that this cannot be done 'readily'." 448 F.Supp. at 404. He further concluded:

Section 2907.01 does not lend itself to a narrowing construction. The statute is so substantially overbroad that only radical surgery could save it.

\* \* \* \* \* \*

To restructure Ohio Revised Code § 2907.01 into a conjunctive statute in order to satisfy the *Miller* test, when it is a disjunctive statute on its face would require strained reasoning by an Ohio Court.

*Id.*, at 405. The incorporation of the *Miller* guidelines into O.R.C. 2907.01(F) by *Burgun* requires that the three parts of the guidelines be conjunctive, as in *Miller*, and that these three parts be proved in addition to one or more of the five sections of O.R.C. § 2907.01(F). But in thus limiting Ohio's obscenity definition in accordance with *Miller*, it was not additionally necessary for the Ohio Supreme Court to impose a conjunctive construction upon the five subsections of O.R.C. 2907.01(F). While noting that

O.R.C. 2907.01(F) should be "closely" read, the supreme court did not hold, and properly so, that it must be read conjunctively. Instead, it held that by the incorporation of the conjunctive *Miller* guidelines "the current statutory definition has been effectively narrowed to constitutionally permitted parameters." 56 Ohio St. 2d at 361, 384 N.E.2d at 261.

■ Aware of the constitutional "parameters" of *Miller*, the Ohio Supreme Court has imposed the *Miller* limitations upon the Ohio statute, thus meeting the petitioner's assertions that O.R.C. 2907.01(F) is overbroad and vague. The implied incorporation of the *Miller* "examples" satisfies the constitutional requirements of specificity and notice. Thus authoritatively construed, O.R.C. 2907.01(F) is constitutional.

## II.

Without designating the Ohio pandering obscenity statute (O.R.C. § 2907.32(A)(2)) by section number, an omission which is presently unimportant, Judge Salvatore Calandra, in his jury instructions, told the jury that the defendant was charged with the following "portion of the pandering obscenity statute:"

I will read to you the statute that we were talking about and that we read when we first began the trial to refresh your memory. The defendant is charged with violation of the statute of pandering obscenity which reads as follows: —or that portion [with] which he is charged: "no person with knowledge of the character of the material or persons involved shall do any of the following: exhibit or advertise for sale or dissemination or sell or publicly disseminate or display any obscene material.

The court then stated:

The elements of the crime, the essential elements of the crime, [are] knowledge of the character or the material, exhibit for

sale, obscene material. I will read you the statute on the definition of obscenity in the State of Ohio. [The Judge then read the statute which is quoted, *supra*, at 829.]

Continuing:

These are the elements of the crime—knowledge of the content and character, exhibit for sale, obscene material. You have a definition of obscene material. In addition, the Supreme Court of the United States has given basic guidelines to those who are the triers of the fact. In this case, you are the triers of the facts so in addition to the statutes which I have read to you, for you to find that the material which is in evidence, the magazine purchased, for you to find that material to be obscene, you must apply these guidelines; the definition of obscene which is stated in that statute; whether the average person applying contemporary community standards would find that the work taken as a whole appeals to the prurient interest; whether the works depict or describe in an offensive way sexual conduct specifically defined by the applicable state law; and whether the work taken as a whole lacks the serious literary, artistic, or scientific value. I won't repeat it, but I will just emphasize that I use the word "and" and not "or." All these must be present beyond a reasonable doubt before you can find that the material presented to you is legally obscene.[5]

After Judge Calandra instructed the jury on other elements of the crime, he further charged the jury with reference to the definition of obscenity as follows:

Further, the Supreme Court has stated that for you to determine that the magazine is legally obscene, you must see whether or not as a whole it appeals to the prurient interest. You must deter-

---

5. Thus he told the jury that it must find that the magazine was obscene according to the statutory definition of obscenity but also that the three elements of the *Miller* guidelines—which he read—"all these must be present beyond a reasonable doubt before you can find

that the material presented to you is legally obscene." Thus, while the jury need only have found present one or more of the five sections of O.R.C. 2907.01(F), the jury was required to find all three elements of the guidelines were present.

mine whether this feeling appeals to a prurient interest, for if it does not, it cannot be obscene. Prurient is p-r-u-r-i-e-n-t, because sometimes I don't pronounce it correctly. Now, let me see if I can define it for you. A magazine or a periodical does not appeal to a prurient interest just because it deals with sex. Prurient interest is an unhealthy, unwholesome, morbid, degrading and shameful interest in sex. An interest in sex is normal, but if the material appeals to an abnormal interest in sex, it can appeal to a prurient interest in your determination and one of the elements you must find. Also the Supreme Court has indicated that one of the guidelines is whether or not the material is patently offensive. In order to be legally obscene, the film must depict sexual conduct or—excuse me—the periodical must depict sexual conduct specifically defined by the state laws and depict in a patently offensive way. That's in a way that offends the contemporary community standards we have described above. You must find that the description of the sexual activity shown in the magazine goes substantially beyond customary limits and candor to determine whether or not it's patently offensive. The guidelines of the Supreme Court requires you to determine whether the magazine taken in its entirety, taken as a whole, lacks any serious literary, artistic, political or scientific value. I believe those words are sort of self-sufficient on themselves; and need no further clarification.

In the foregoing obscenity instructions, constituting all the court's instructions on this subject, it is evident that the court did not read or refer to the *Miller* "examples."

In his recommended report, the magistrate noted that the court (Judge Calandra) did not define sexual conduct in terms of the two examples in *Miller*, at p. 25, nor did the court define sexual conduct as it appears in Ohio Revised Code § 2907.01(A). The magistrate then concluded:

Since the court instructions did not define the sexual conduct to be restricted with the requisite specificity, the instructions

were unconstitutionally overbroad. *Sovereign News Co., supra*, at p. 400.

Thereupon he recommended that the petition for a writ of habeas corpus be granted.

Immediately before Judge Calandra gave his general instructions to the jury, he informed defense counsel that he would "charge the jury on the *Miller* case and the *Smith* case and the *Burgen* (*sic*) case." As the quoted portions of Judge Calandra's instructions indicate, he gave the jury the *Miller* guidelines. Following the completion of the general instructions, there was a discussion at the bench about several matters. At that time, defense counsel did not ask the judge to add the *Miller* "examples" to the court's instructions on the *Miller* guidelines. Thus defendant did not ask the court to give to the jury the *Miller* "examples." Moreover, defendant did not object to the giving of the *Miller* guidelines without the *Miller* "examples."

In *Henderson v. Kibbe*, 431 U.S. 145, 154–55, 97 S.Ct. 1730, 1736–37, 52 L.Ed.2d 203 (1977), the Court reversed a decision of the Second Circuit wherein a divided panel had granted a state prisoner's petition for habeas corpus on the ground that a New York state trial judge's failure to instruct the jury on the issue of causation was constitutional error. The Court observed:

Orderly procedure requires that the respective adversaries' views as to how the jury should be instructed be presented to the trial judge in time to enable him to deliver an accurate charge and to minimize the risk of committing reversible error. It is the rare case in which an improper instruction will justify reversal of a criminal conviction when no objection has been made in the trial court.

The Court further noted that "an omission or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law." The Court announced the rule that is controlling here:

The burden of demonstrating that an erroneous instruction was so prejudicial that it will support a collateral attack on the constitutional validity of a state

court's judgment is even greater than the showing required to establish plain error on direct appeal. The question in such a collateral proceeding is "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process," *Cupp v. Naughten,* 414 U.S. [141] at 147, [94 S.Ct. 396, 400, 38 L.Ed.2d 368] not merely whether "the instruction is undesirable, erroneous, or even 'universally condemned'."

*Id.,* at 154, 97 S.Ct. at 1736–37.

This controlling rule of federal habeas corpus law differs from the magistrate's recommended ruling, isolating, as he did, the judge's instructions from the rest of the trial and determining that the court's instructions were unconstitutionally incomplete. However, the question in this federal habeas corpus proceeding is not whether Judge Calandra's instruction to the jury, *sans* a definition of "sexual conduct" in terms of the two examples in *Miller,* 413 U.S. at p. 25, 93 S.Ct. at p. 2615, nor ". . . as it appears in O.R.C. 2907.01(A)," rendered the "instructions . . . unconstitutionally overbroad." The question rather is whether the instructions without such definition of sexual conduct "so infected the entire trial that the resulting conviction violates due process."

Turoso's pandering obscenity conviction rests primarily on his sale of the magazines "Sexual Fantasies Part I and Part II." In its cover pages, the magazine is described as "scientific, educational and sociological" and "dedicated to sexual knowledge of the mature adult." The text portion of the 63 pages of both Part I and Part II is typified by this excerpt:

> Again, let us clarify—everyone has, at one time or another, "bizarre" or exotic, even quite weird, sexual fantasies. One is tempted to think that such are abnormal, but quite the opposite is true. The total absence of such from one's conscious fantasy rather indicates excessive repression and is a sign therefore of emotional or mental disorder as opposed to sound health. But the fact that no such conscious fantasy occurs does not mean the mind is free of bizarre imaginings concerning sex. It merely indicates that such occur completely below the level of consciousness.

It is unnecessary to further appraise the text portions of the magazines. The jury was correctly instructed by the trial judge, in accordance with the first *Miller* guideline, to determine whether "the average person applying community standards would find that the magazine, taken as a whole, appeals to the prurient interest." But the trier of the facts, in carrying out this instruction, is met with the obvious structuring of the magazines. The text makes no reference to, and makes no attempt to, incorporate into the text the photographic depictions of explicit sexual conduct and activity which appear on each of the pages in both Part I and Part II.

Undoubtedly, it is these photographic depictions (88 in Part I and 104 in Part II) which are "dedicated to sexual knowledge of the mature adult." However, examination demonstrates that despite this purported purpose, these depictions are "sex . . . exploited without limit by . . . pictures exhibited or sold in places of public accommodation." *Miller,* at p. 25, 93 S.Ct. at p. 2615. The depictions display two or three persons of different sexes, or of the same sex, engaged in various sexual acts. In addition to so-called normal sexual copulation between male and female, there is masturbation, cunnilingus, fellatio, and anal intercourse, with the participants in twos or threes.

It is conclusively evident and it is determined that the photographic depictions of these sexual acts qualify as "plain examples of what a state statute could define for regulation under part (b) of the standard announced in this opinion," *Miller, supra,* at 25, 93 S.Ct. at p. 2615. Each of the 192 photographic depictions of explicit sex both fall within either (a) or (b) of the *Miller* "examples":

> (a) patently offensive representations or descriptions of ultimate sexual acts, normal or perverted, actual or simulated.
> (b) patently offensive representations or descriptions of masturbation, excretory functions, and lewd exhibition of the genitals.

Also, the 192 depictions display "sexual conduct" as thus defined in section 2907.01(A):

"Sexual conduct" means vaginal intercourse between a male and female, and anal intercourse, fellatio, and cunnilingus between persons regardless of sex. Penetration, however slight, is sufficient to complete vaginal or anal intercourse.

■ The finding of guilty warrants the presumption that the jury found that each of the three *Miller* guidelines was established by the evidence beyond a reasonable doubt. The evidence, highlighted here, fully supports those findings. It is not conceivable, nor does the record support the proposition, that the jury might have acquitted the defendant had Judge Calandra included the *Miller* "examples" in his instructions to the jury. Certainly the magistrate's opinion does not suggest that this might have been the verdict had the *Miller* "examples" been included in the judge's instructions to the jury.

Applying the *Henderson v. Kibbe* test, it is concluded and determined that the omission of the *Miller* "examples" from the judge's instructions to the jury in no manner "infected" the entire trial or produced the conviction. Therefore, the instructions, as given, did not violate due process.

The habeas corpus petition of Frank Turoso is denied.

IT IS SO ORDERED.