# WARD *v.* ILLINOIS

No. 76–415.   Argued April 27, 1977—Decided June 9, 1977

*J. Steven Beckett* argued the cause for appellant. With him on the brief was *Donald M. Reno, Jr.*

*Melbourne A. Noel, Jr.,* Assistant Attorney General of Illinois, argued the cause for appellee. With him on the brief were *William J. Scott,* Attorney General, and *Raymond McKoski,* Assistant Attorney General.

Mr. Justice White delivered the opinion of the Court.

The principal issue in this case is the validity of the Illinois obscenity statute, considered in light of *Miller* v. *California,* 413 U. S. 15 (1973). There we reaffirmed numerous prior decisions declaring that "obscene material is unprotected by the First Amendment," *id.,* at 23; but acknowledging "the inherent dangers of undertaking to regulate any form of expression," *ibid.,* we recognized that official regulation must be limited to "works which depict or describe sexual conduct" and that such conduct "must be specifically defined by the applicable state law, as written or authoritatively construed." *Id.,* at 24. Basic guidelines for the trier of fact, along with more specific suggestions, were then offered:

"The basic guidelines for the trier of fact must be: (a) whether 'the average person, applying contemporary

community standards' would find that the work, taken as a whole, appeals to the prurient interest, *Kois* v. *Wisconsin,* [408 U. S. 229,] 230 [(1972)], quoting *Roth* v. *United States,* [354 U. S. 476,] 489 [(1957)]; (b) whether the work depicts or describes, in a patently offensive way, sexual conduct specifically defined by the applicable state law; and (c) whether the work, taken as a whole, lacks serious literary, artistic, political, or scientific value. We do not adopt as a constitutional standard the *'utterly* without redeeming social value' test of *Memoirs* v. *Massachusetts,* 383 U. S., at 419; that concept has never commanded the adherence of more than three Justices at one time. See *supra,* at 21. If a state law that regulates obscene material is thus limited, as written or construed, the First Amendment values applicable to the States through the Fourteenth Amendment are adequately protected by the ultimate power of appellate courts to conduct an independent review of constitutional claims when necessary. See *Kois* v. *Wisconsin, supra,* at 232; *Memoirs* v. *Massachusetts, supra,* at 459–460 (Harlan, J., dissenting); *Jacobellis* v. *Ohio,* 378 U. S., at 204 (Harlan, J., dissenting); *New York Times Co.* v. *Sullivan,* 376 U. S. 254, 284–285 (1964); *Roth* v. *United States, supra,* at 497–498 (Harlan, J., concurring and dissenting).

"We emphasize that it is not our function to propose regulatory schemes for the States. That must await their concrete legislative efforts. It is possible, however, to give a few plain examples of what a state statute could define for regulation under part (b) of the standard announced in this opinion, *supra:*

"(a) Patently offensive representations or descriptions of ultimate sexual acts, normal or perverted, actual or simulated.

"(b) Patently offensive representations or descriptions

of masturbation, excretory functions, and lewd exhibition of the genitals." *Id.*, at 24–25. (Footnotes omitted.)

Illinois Rev. Stat., c. 38, § 11–20 (a)(1) (1975), forbids the sale of obscene matter. Section 11–20 (b) defines "obscene" as follows:

"A thing is obscene if, considered as a whole, its predominant appeal is to prurient interest, that is, a shameful or morbid interest in nudity, sex or excretion, and if it goes substantially beyond customary limits of candor in description or representation of such matters. A thing is obscene even though the obscenity is latent, as in the case of undeveloped photographs." [1]

In October 1971 appellant Ward was charged in the State of Illinois with having sold two obscene publications in violation of § 11–20 (a)(1). A jury was waived. At the bench trial the State's evidence consisted solely of the two publications—"Bizarre World" and "Illustrated Case Histories, a Study of Sado-Masochism"—and the testimony of the police officer who purchased them in Ward's store. Ward was found guilty, and in April 1972, he was sentenced to one day in jail and fined $200. His conviction was affirmed in the state appellate courts after this Court's decision in *Miller.* The Illinois Supreme Court expressly rejected his challenge to the constitutionality of the Illinois obscenity statute for failure to conform to the standards of *Miller,* as well as a claim that the two publications were not obscene. 63 Ill. 2d 437, 349 N. E. 2d 47 (1976). Ward appealed, and we noted probable jurisdiction, 429 U. S. 1037 (1977), to resolve a conflict with a

---

[1] Section 11–20 (c) provides:

"(c) Interpretation of Evidence.

"Obscenity shall be judged with reference to ordinary adults, except that it shall be judged with reference to children or other specially susceptible audiences if it appears from the character of the material or the circumstances of its dissemination to be specially designed for or directed to such an audience."

decision of a three-judge District Court for the Northern District of Illinois. *Eagle Books, Inc.* v. *Reinhard,* 418 F. Supp. 345 (1976), appeal docketed, No. 76–366. We affirm.

As we read the questions presented by Ward,[2] they fairly subsume four issues. First, is the claim that Illinois has failed to comply with *Miller*'s requirement that the sexual conduct that may not be depicted in a patently offensive way must be "specifically defined by the applicable state law as written or authoritatively construed," see *supra,* at 768, and that absent such compliance the Illinois law is unconstitutionally vague because it failed to give him notice that materials dealing with the kind of sexual conduct involved here could not legally be sold in the State. This claim is wholly without merit. As we shall see below, the State has complied with *Miller,* but even if this were not the case, appellant had ample guidance from the Illinois Supreme Court that his conduct did not conform to the Illinois law. Materials such as these, which by title or content may fairly be described as sado-masochistic, had been expressly held to violate the Illinois statute long before *Miller* and prior to the sales for which Ward was prosecuted.

In *People* v. *Sikora,* 32 Ill. 2d 260, 267–268, 204 N. E. 2d 768, 772–773 (1965), there are detailed recitations of the kind of sexual conduct depicted in the materials found to be obscene under the Illinois statute. These recitations included "sadism and masochism." [3] See also *People* v. *DeVilbiss,* 41

---

[2] The questions presented in Ward's Jurisdictional Statement 3 are (1) whether the provisions of § 11–20, "on its face and as construed by the Illinois Supreme Court, are vague, indefinite, overbroad and uncertain, in violation of the free speech and press and due process provisions of the First and Fourteenth Amendments to the Constitution of the United States"; and (2) whether "the publications, 'Bizarre World' and 'Illustrated Case Histories, a Study of Sado-Masochism' are constitutionally protected, as a matter of law."

[3] The Illinois Supreme Court described the materials as follows, 32 Ill. 2d, at 267–268, 204 N. E. 2d, at 772–773:

" 'Lust Campus' by Andrew Shaw is a story of sexual adventures on a

Ill. 2d 135, 142, 242 N. E. 2d 761, 765 (1968); [4] cf. *Chicago* v. *Geraci*, 46 Ill. 2d 576, 582–583, 264 N. E. 2d 153, 157 (1970).[5] The construction of the statute in *Sikora* gives detailed meaning to the Illinois law, is binding on us, and makes plain that § 11–20 reaches the kind of sexual materials which we now

---

college campus 'where even members of the faculty taught sin and evil.' The book describes homosexuals 'necking' on a public beach; mutual masturbation; self-fondling; a circle of persons engaged in oral-genital contact; rape; intercourse; lesbian intercourse; cunnilingus and flagellation; flagellation with barbed wire; an abortion with red-hot barbed wire; masturbation with a mirror reflection, and a transvestite episode.

" 'Passion Bride' by John Dexter described curricular and extracurricular sexual episodes that take place during a honeymoon on the French Riviera. The book describes masturbation; intercourse; a party between an old man and three prostitutes; attempted intercourse in a bath; lesbian foreplay; flagellation; rape ending in the death of the female from a broken back and intercourse ending in the broken back of the male participant.

" 'Crossroads of Lust' by Andrew Shaw describes the sexual adventures of various persons in a small town. There are numerous descriptions of intercourse; lesbian intercourse; oral-genital contact; and rape. A woman stabs a man in the course of intercourse, completing the act after he is dead. There are also three voyeurism scenes, two of which involve watching lesbian love play. The third is characterized by sadism and masochism."

[4] This case involved a local ordinance that the Illinois Supreme Court described as identical to the state statute. The court described the materials at issue:

"The books are replete with accounts of homosexual acts, masturbation, flagellation, oral-genital acts, rape, voyeurism, masochism and sadism. These accounts can only appeal to the prurient interest, and clearly go beyond customary limits of candor in the kinds of conduct described and in the detail of description." 41 Ill. 2d, at 142, 242 N. E. 2d, at 765.

[5] The materials under scrutiny—also under a local ordinance—were described by the court:

"The author's accounts of normal and abnormal sexual conduct, including sodomy, flagellation, masturbation, oral-genital contact, anal intercourse, lesbianism, and sadism and masochism, are vivid, intimately detailed, and explicit. (*Cf. One, Inc.* v. *Olesen* (1958), 355 U. S. 371 . . .)" 46 Ill. 2d, at 582–583, 264 N. E. 2d, at 157.

have before us. If Ward cannot be convicted for selling these materials, it is for other reasons and not because the Illinois statute is vague and gave him no notice that the statute purports to ban the kind of materials he sold. The statute is not vague as applied to Ward's conduct.

Second, Ward appears to assert that sado-masochistic materials may not be constitutionally proscribed because they are not expressly included within the examples of the kinds of sexually explicit representations that *Miller* used to explicate the aspect of its obscenity definition dealing with patently offensive depictions of specifically defined sexual conduct. But those specifics were offered merely as "examples," 413 U. S., at 25; and, as later pointed out in *Hamling* v. *United States*, 418 U. S. 87, 114 (1974), they "were not intended to be exhaustive." Furthermore, there was no suggestion in *Miller* that we intended to extend constitutional protection to the kind of flagellatory materials that were among those held obscene in *Mishkin* v. *New York*, 383 U. S. 502, 505–510 (1966). If the *Mishkin* publications remain unprotected, surely those before us today deal with a category of sexual conduct which, if obscenely described, may be proscribed by state law.

The third claim is simply that these materials are not obscene when examined under the three-part test of *Miller*. This argument is also foreclosed by *Mishkin* v. *New York, supra,* which came down the same day as *Memoirs* v. *Massachusetts,* 383 U. S. 413 (1966), and which employed the obscenity criteria announced by the latter case. See *Marks* v. *United States,* 430 U. S. 188, 194 (1977). The courts below examined the materials and found them obscene under the Illinois statute, which, as we shall see, *infra,* at 774–776, conforms to the standards set out in *Miller,* except that it retains the stricter *Memoirs* formulation of the "redeeming social value" factor. We have found no reason to differ with the Illinois courts.

Fourth, even assuming that the Illinois statute had been

construed to overcome the vagueness challenge in this case and even assuming that the materials at issue here are not protected under *Miller,* there remains the claim that Illinois has failed to conform to the *Miller* requirement that a state obscenity law, as written or authoritatively construed, must state specifically the kinds of sexual conduct the description or representation of which the State intends to proscribe by its obscenity law. If Illinois has not complied with this requirement, its statute is arguably overbroad, unconstitutional on its face, and an invalid predicate for Ward's conviction.

As we see it, Illinois has not failed to comply with *Miller,* and its statute is not overbroad. *People* v. *Ridens,* 51 Ill. 2d 410, 282 N. E. 2d 691 (1972), vacated and remanded, 413 U. S. 912 (1973), involved a conviction under this same Illinois obscenity law. It was pending on our docket when our judgment and opinion in *Miller* issued. We vacated the *Ridens* judgment and remanded the case for further consideration in the light of *Miller.* On remand, the Illinois Supreme Court explained that originally § 11–20 had provided the tests for obscenity found in *Roth* v. *United States,* 354 U. S. 476 (1957), and that it subsequently had been construed to incorporate the tripartite standard found in *Memoirs* v. *Massachusetts, supra,* including the requirement that the materials prohibited be "utterly without redeeming social value." *People* v. *Ridens,* 59 Ill. 2d 362, 321 N. E. 2d 264 (1974). The Illinois court then proceeded to "construe section 11–20 of the Criminal Code . . . to incorporate parts (a) and (b) of the *Miller* standards," *id.,* at 373, 321 N. E. 2d, at 270, but to retain the "utterly without redeeming social value" standard of *Memoirs* in preference to the more relaxed criterion contained in part (c) of the *Miller* guidelines. Ridens' conviction was affirmed, and we denied certiorari.[6]   421 U. S. 993 (1975).

---

[6] Four Justices dissented, but waived the Rule of Four—that, if at least

Because the Illinois court did not go further and expressly describe the kinds of sexual conduct intended to be referred to under part (b) of the *Miller* guidelines, the issue is whether the Illinois obscenity law is open-ended and overbroad. As we understand the Illinois Supreme Court, however, the statute is not vulnerable in this respect. That court expressly incorporated into the statute part (b) of the guidelines, which requires inquiry "whether the work depicts or describes, in a patently offensive way, sexual conduct specifically defined by the applicable state law." 413 U. S., at 24. The Illinois court thus must have been aware of the need for specificity and of the *Miller* Court's examples explaining the reach of part (b). See *id.,* at 25. The Illinois court plainly intended to conform the Illinois law to part (b) of *Miller,* and there is no reason to doubt that, in incorporating the guideline as part of the law, the Illinois court intended as well to adopt the *Miller* examples, which gave substantive meaning to part (b) by indicating the kinds of materials within its reach. The alternative reading of the decision would lead us to the untenable conclusion that the Illinois Supreme Court chose to create a fatal flaw in its statute by refusing to take cognizance of the specificity requirement set down in *Miller.*

Furthermore, in a later case, *People* v. *Gould,* 60 Ill. 2d 159, 324 N. E. 2d 412 (1975), the Illinois Supreme Court quoted at length from *Miller* v. ˙*California,* including the entire passage set out at the beginning of this opinion, *supra,* at 768–770—a passage that contains the explanatory examples as well as the guidelines. It then stated that *Ridens* had construed the Illinois statute to include parts (a) and (b) of the *Miller* guidelines, and it expressly referred to the standards set out in the immediately preceding quotation from *Miller.* 60 Ill. 2d, at 164–165, 324 N. E. 2d, at 415. Because the quotation contained not only part (b) but the examples given to

---

four Justices so request, the Court will give plenary consideration to a particular case. 421 U. S., at 994 n.

explain that part, it would be a needlessly technical and wholly unwarranted reading of the Illinois opinions to conclude that the state court did not adopt these explanatory examples as well as the guidelines themselves.

It might be argued that, whether or not the Illinois court adopted the *Miller* examples as part of its law, § 11–20 nevertheless remains overbroad because the State has not provided an exhaustive list of the sexual conduct the patently offensive description of which may be held obscene under the statute. We agree with the Illinois Supreme Court, however, that "in order that a statute be held overbroad the overbreadth 'must not only be real, but substantial as well, judged in relation to the statute's plainly legitimate sweep.' (*Broadrick* v. *Oklahoma,* 413 U. S. 601, 615 . . . .)" *People* v. *Ridens, supra,* at 372, 321 N. E. 2d, at 269. Since it is plain enough from its prior cases and from its response to *Miller* that the Illinois court recognizes the limitations on the *kinds* of sexual conduct which may not be represented or depicted under the obscenity laws, we cannot hold the Illinois statute to be unconstitutionally overbroad.

Given that Illinois has adopted *Miller*'s explanatory examples, what the State has done in attempting to bring its statute in conformity with *Miller* is surely as much as this Court did in its post-*Miller* construction of federal obscenity statutes. In *Hamling* v. *United States,* 418 U. S., at 114, we construed 18 U. S. C. § 1461, which prohibits the mailing of obscene matter, to be limited to "the sort of" patently offensive representations or descriptions of that specific hardcore sexual conduct given as examples in *Miller*. We have also indicated our approval of an identical approach with respect to the companion provisions of 18 U. S. C. § 1462, which prohibits importation or transportation of obscene matter. See *United States* v. *12 200-Ft. Reels of Film,* 413 U. S. 123, 130 n. 7 (1973).

Finding all four of Ward's claims to be without merit, we affirm the judgment of the Illinois Supreme Court.

*So ordered.*

MR. JUSTICE BRENNAN, with whom MR. JUSTICE STEWART joins, dissenting.

Petitioner was convicted of selling allegedly obscene publications in violation of the Illinois Obscenity Statute, Ill. Rev. Stat., c. 38, § 11–20 (a)(1) (1975). The Illinois Supreme Court affirmed the conviction. Although I have joined my Brother STEVENS' dissent, I could also reverse the conviction on the ground I have previously relied upon, namely that this statute is "clearly overbroad and unconstitutional on its face." 413 U. S. 913, 914 (1973) (BRENNAN, J., dissenting in *Miller* v. *United States* and other cases), citing *Miller* v. *California*, 413 U. S. 15, 47 (1973) (BRENNAN, J., dissenting); see *Ridens* v. *Illinois*, 413 U. S. 912 (1973), vacating and remanding 51 Ill. 2d 410, 282 N. E. 2d 691 (1972).

Mr. JUSTICE STEVENS, with whom MR. JUSTICE BRENNAN, MR. JUSTICE STEWART, and MR. JUSTICE MARSHALL join, dissenting.

The decision in this case confirms the statement in *Miller* v. *California*, 413 U. S. 15, 23, that "[t]his is an area in which there are few eternal verities." Today, the Court silently abandons one of the cornerstones of the *Miller* test announced so forcefully just five years ago.

The *Miller* Court stated:

> "Under the holdings announced today, no one will be subject to prosecution for the sale or exposure of obscene materials unless these materials depict or describe patently offensive 'hard core' sexual conduct specifically defined by the regulating state law, as written or construed. We are satisfied that these specific prerequisites will provide fair notice to a dealer in such materials that

his public and commercial activities may bring prosecution." *Id.*, at 27.

The specificity requirement is stressed elsewhere in the opinion.[1] More than 50 cases were remanded for further consideration to give the defendants the "benefit" of this aspect of *Miller*. See 413 U. S. 902 *et seq.; Marks* v. *United States*, 430 U. S. 188, 197 n. 12.

Many state courts, taking *Miller* at face value, invalidated or substantially limited their obscenity laws.[2] Others, like Illinois, did "little more than pay lip service to the specificity requirement in *Miller*." F. Schauer, The Law of Obscenity 167 (1976). Like most pre-*Miller* obscenity statutes, the Illinois statute contained open-ended terms broad enough to prohibit the distribution of any material making an "appeal . . . to prurient interest."[3] In its post-*Miller* opinions,

---

[1] "That conduct must be specifically defined by the applicable state law, as written or authoritatively construed. . . .

"The basic guidelines for the trier of fact must be: . . . (b) whether the work depicts or describes, in a patently offensive way, sexual conduct specifically defined by the applicable state law . . . ." 413 U. S., at 24.

On the following page, the Court gives examples of such "specific" definitions.

[2] *E. g., State* v. *Harding*, 114 N. H. 335, 321 A. 2d 108 (1974); *People* v. *Tabron*, 320 Colo. 646, 544 P. 2d 372 (1976); *ABC Interstate Theatres, Inc.* v. *State*, 325 So. 2d 123 (Miss. 1976); *State* v. *Wedelstedt*, 213 N. W. 2d 652 (Iowa 1973); *Commonwealth* v. *Horton*, 365 Mass. 164, 310 N. E. 2d 316 (1974). Many statutes passed since *Miller* have included definitions more specific than that given in *Miller*. See, *e. g.*, La. Rev. Stat. Ann. § 14:106 (1974); N. Y. Penal Law § 235.00 (McKinney 1974 and Supp. 1976).

[3] This Court saved such a statute in *Hamling* v. *United States*, 418 U. S. 87, by holding that it was limited to the examples given in *Miller*. In its final footnote to *United States* v. *12 200-Ft. Reels of Film*, 413 U. S. 123, 130 n. 7, the Court had stated that it was prepared to construe generic words such as "obscene" and "lewd" in 18 U. S. C. § 1462, "as limiting regulated material to patently offensive representations or descriptions of that *specific* 'hard core' sexual conduct given as examples in

the Illinois Supreme Court has made it clear that the statute covers all of the *Miller* examples. It has not, however, stated that the statute is limited to those examples, or to any other specifically defined category.[4]

*Miller.*" (Emphasis added.) In *Hamling*, the Court quoted this language and added:

"As noted above, we indicated in [*12 200-Ft. Reels of Film*] that we were prepared to construe the generic terms in 18 U. S. C. § 1462 to be limited to the sort of 'patently offensive representations or descriptions of that specific "hard core" sexual conduct given as examples in *Miller* v. *California.*' We now so construe the companion provision in 18 U. S. C. § 1461 . . . ." 418 U. S., at 114.

[4] In a well-reasoned opinion, a three-Judge District Court for the Northern District of Illinois carefully reviewed the Illinois authorities and concluded that Illinois has failed to meet the specificity requirement of *Miller*. *Eagle Books, Inc.* v. *Reinhard*, 418 F. Supp. 345 (ND Ill. 1976). This conclusion is well founded.

The Illinois statute defines obscenity in these terms:

"A thing is obscene if, considered as a whole, its predominant appeal is to prurient interest, that is, a shameful or morbid interest in nudity, sex or excretion, and if it goes substantially beyond customary limits of candor in description or representation of such matters." Ill. Rev. Stat., c. 38, § 11-20 (b) (1975).

Nothing in this definition or the rest of the statute "specifically defines" what depiction of hard-core sexual conduct is prohibited.

The Illinois Supreme Court has not remedied this deficiency by supplying a limiting construction. In its primary discussion of the State's obscenity statute in relation to the *Miller* specificity requirement, *People* v. *Ridens*, 59 Ill. 2d 362, 321 N. E. 2d 264 (1974) (*Ridens II*), the Illinois Supreme Court relied on two cases to uphold the statute. In the first case, *Grayned* v. *City of Rockford*, 408 U. S. 104, 110, this Court noted in language quoted by the Illinois court that "[t]he words of the Rockford ordinance are marked by 'flexibility and reasonable breadth, rather than meticulous specificity . . . .' " The second case which the *Ridens II* court relied upon was its own decision in *People* v. *Raby*, 40 Ill. 2d 392, 240 N. E. 2d 595 (1968). That case concerned the alleged vagueness of a statute designed to prohibit public disorder. The Illinois court quoted the following language from *Raby*, and in the next sentence relied upon that decision and *Grayned* in upholding the statute's specificity:

"It is true that section 26-I (a) does not attempt to particularize all

Nevertheless, this Court affirms the conviction in this Illinois case on two theories. The first is that this particular defendant had notice that the State considered these materials obscene, because prior Illinois cases had upheld obscenity convictions concerning similar material. But, if such notice is all that is required, it is difficult to understand why the *Miller* case itself ∘ was remanded for consideration of the specificity issue, see 413 U. S., at 37. For the description of

of the myriad kinds of conduct that may fall within the statute. The legislature deliberately chose to frame the provision in general terms, prompted by the futility of an effort to anticipate and enumerate all of the methods of disrupting public order that fertile minds might devise." 40 Ill. 2d, at 396, 240 N. E. 2d, at 598.

Neither of these decisions requires conduct to be specifically defined; indeed, *Raby* notes that to survive a vagueness attack a statute need not "attempt to particularize all of the myriad kinds of conduct" within its bounds. This may be true for other vagueness attacks, but does not square with the special *Miller* requirement that conduct be specifically defined. Nowhere else in the *Ridens II* opinion does the Illinois Supreme Court limit the reach of the obscenity statute.

In the present case, the Illinois Supreme Court again considered the specificity problem, and again refused to narrow the statute:

"It was held in Ridens II that the obscenity statute was sufficiently clear and that it adequately informed the public of the conduct whose depiction is proscribed. We noted that the statutory definition of obscenity includes within the scope of the 'prurient interest' a 'shameful or morbid interest in nudity, sex or excretion.' The defendant argues that we erred in Ridens II in our interpretation of *Miller* and that *Miller* requires obscenity statutes to be much more specific in defining the type of material which will be considered obscene. We see no reason to reconsider our decision in Ridens II. It is extremely difficult to define the term 'obscenity' with a fine degree of precision. We again express our opinion that Illinois' statutory definition is sufficiently clear to withstand constitutional objections." 63 Ill. 2d 437, 441, 349 N. E. 2d 47, 49 (1976).

Thus, there does not appear to be anything in the Illinois decisions that would preclude the State from prosecuting forms of obscenity not "specifically defined" in prior decisions. And, as noted above, the statute provides no specific definition in this area.

the materials involved in *Miller* leaves no room for doubt that they were similar to materials which had often been the subject of prosecutions in the past;[5] there clearly was no question of fair notice.[6]

The Court's second theory is that, in any event, the Illinois statute is sufficiently specific to satisfy *Miller*. Although the statute does not contain an "exhaustive list" of specific examples, *ante*, at 776, it passes muster because it contains a generic reference to "the *kinds* of sexual conduct which may not be represented or depicted under the obscenity laws . . . ." *Ibid.* (emphasis in original). To hold that the list need not be exhaustive is to hold that a person can be prosecuted although the materials he sells are not specifically described in the list. Only five years ago, the Court promised that "no one" could be so prosecuted, *Miller*, 413 U. S., at 27. And if the statute need only describe the "kinds" of proscribed sexual conduct, it adds no protection to what the Constitution itself creates. For in *Jenkins* v. *Georgia*, 418 U. S. 153, this Court held that the Constitution protected all expression which is not "within either of the two examples given in *Miller*" or "sufficiently similar to such material to justify similar treatment." *Id.*, at 161.

---

[5] The materials are described as follows in the opinion:

"While the brochures contain some descriptive printed material, primarily they consist of pictures and drawings very explicitly depicting men and women in groups of two or more engaging in a variety of sexual activities, with genitals often prominently displayed." 413 U. S., at 18.

The State's description was somewhat more specific:

"The materials involved are a collection of depictions of cunnilingus, sodomy, buggery and other similar sexual acts performed in groups of two or more." Brief for Appellee in No. 70–73, O. T. 1972, p. 26.

[6] If fair notice is the issue, it is hard to see how this can be provided by a narrowing construction made after the underlying conduct. Yet in *Hamling*, 418 U. S., at 115–116, the Court held such *ex post facto* "notice" sufficient.

One of the strongest arguments against regulating obscenity through criminal law is the inherent vagueness of the obscenity concept. The specificity requirement as described in *Miller* held out the promise of a principled effort to respond to that argument. By abandoning that effort today, the Court withdraws the cornerstone of the *Miller* structure and, undoubtedly, hastens its ultimate downfall. Although the decision is therefore a mixed blessing, I nevertheless respectfully dissent.