**Frank TUROSO, Petitioner-Appellee (80–3742/3), Petitioner-Appellant (80–3696),**

**Laura Spiker, Petitioner-Appellee (80–3728),**

**Dalene Burgun, Petitioner-Appellant (80–3817),**

**William Lee, Petitioner-Appellee (81–3127),**

v.

**The CLEVELAND MUNICIPAL COURT, the Honorable Salvatore Calandra, Richard M. Brennan, Frank O'Bell and William J. Brown, Respondents-Appellees (80–3696) (80–3817), Respondents-Appellants (80–3728, 3742, 3743 and 81–3127).**

Nos. 80–3696, 80–3728, 80–3742, 80–3743, 80–3817 and 81–3127.

United States Court of Appeals, Sixth Circuit.

Argued June 11, 1981.

Decided Feb. 4, 1982.

Rehearing Denied April 15, 1982.

Bernard A. Berkman, J. Michael Murray, Berkman, Gordon, Levy, Murray & Palda, Cleveland, Ohio, for petitioners.

Bruce A. Taylor, Phoenix, Ariz., Donald F. Black, Asst. Director of Law, Cleveland, Ohio, William J. Brown, Atty. Gen., Richard David Drake, Asst. Atty. Gen., Columbus, Ohio, for respondents.

Before ENGEL and MERRITT, Circuit Judges, and HOGAN, District Judge.*

ENGEL, Circuit Judge.

In these six consolidated appeals, four habeas corpus petitioners assert that their convictions were invalid because the Ohio obscenity statute under which they were charged is constitutionally overbroad and vague. It is vague, they claim, because its language is confusing and fails to apprise them and others of what conduct is proscribed by the statute. It is overbroad, they claim, because it proscribes conduct which is protected expression under the First and Fourteenth Amendments.

* Hon. Timothy S. Hogan, Senior Judge, United States District Court for the Southern District of Ohio, sitting by designation.

We are presented in these appeals with no other issues, although others were raised in direct appeals to Ohio's appellate courts, and in the petitions filed in the district courts pursuant to 28 U.S.C. § 2254.

Although each appeal reaches us in a somewhat different posture, each has certain aspects in common with the others. All petitioners were found guilty of a violation of Ohio's pandering statute, Ohio Rev. Code § 2907.32, following jury trials in the Cleveland Municipal Court. Those trials took place before the Supreme Court of Ohio determined that the Ohio statute was neither overbroad nor vague when read in *pari materia* with the requirements of *Miller v. California*, 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973). *See State v. Ronald Burgun, et al.*, 56 Ohio St.2d 354, 384 N.E.2d 255 (1978).[1] Nonetheless, the trial judge in each trial instructed the jury by reciting the provision of Ohio Rev.Code § 2907.01(F), defining "obscene" material or performance, and also by reciting the three basic guidelines in obscenity cases as set forth in *Miller.*

All petitioners requested habeas relief following various appeals in the state court system. Habeas relief was granted in four cases and was denied in two cases. Of the four judges of the United States District Court for the Northern District of Ohio considering the issue, two judges (District Judges John M. Manos and Ann Aldrich) concluded that the statute was both overbroad and vague, and two judges (Chief Judge Frank Battisti and Senior District Judge William K. Thomas) concluded that the statute was constitutionally valid. The contrary views are set forth in two opinions written by Judge Manos,[2] holding the statute invalid, and in opinion by Senior Judge Thomas, upholding the statute. *Turoso v. Cleveland Municipal Court*, 531 F.Supp. 829 (N.D.Ohio 1980).

In *Ward v. Illinois*, 431 U.S. 767, 97 S.Ct. 2085, 52 L.Ed.2d 738 (1976), the Supreme Court found that state courts may "authoritatively construe" an otherwise defective statute to conform to the *Miller* requirements. Following the guidance of *Ward*, another panel of this court, of which the writer of this opinion was also a member, has thus specifically upheld the statute in response to claims of facial invalidity due to overbreadth and vagueness. *Sovereign News Co. v. Falke*, —— F.2d —— (6th Cir. 1981). The panel found that any infirmities which may exist in the statutory language have been cured by the Ohio Supreme Court's incorporation of the *Miller* guidelines and examples in *Burgun, supra*. This holding would appear to lay to rest the issues framed in these appeals as well, since they are similarly limited to questions of constitutional infirmity of the statute as a whole. However, the decision in *Sovereign* addresses itself only to declaratory and injunctive relief under 42 U.S.C. § 1983 against anticipated but largely unrealized injury. Because these appeals arise in the setting of habeas corpus relief sought after actual conviction for violation of the statute, we discuss the subject more specifically here to highlight problems peculiar to actual prosecutions.

## I.

Section 2907 of the Ohio Revised Code deals with three categories of sex-related crimes: sexual assaults and displays (Ohio Rev.Code §§ 2907.02–2907.09); prostitution offenses (Ohio Rev.Code §§ 2907.21–2907.-27); and offenses related to the dissemination of obscenity and matter harmful to juveniles (Ohio Rev.Code §§ 2907.31–2907.-37).

The four habeas petitioners here were each charged with violation of Ohio Rev.

1. Ronald Burgun is not to be confused with one petitioner here, Dalene Burgun (No. 80–3817). One of the petitioners before us today had his state appeal considered by the Supreme Court of Ohio as a companion case to *Burgun*. Appeal No. 80–3743 (Turoso I).

2. One opinion was published and one was not. *See Sovereign News v. Falke*, No. C77–230 (N.D.Ohio, September 19, 1980) ("Sovereign II"); *Sovereign News v. Falke*, 448 F.Supp. 306 (N.D.Ohio 1977) ("Sovereign I").

Code § 2907.32(A).[3] Petitioners Lee and Spiker were charged with violation of section 2907.32(A)(4), while petitioners Burgun and Turoso were charged with violating Ohio Rev.Code § 2907.32(A)(2).

The actual instructions given by the state trial judge in each of the underlying state prosecutions leave much to be desired by way of clarity, but it is fair to observe that in each case the jury was instructed as to the basic elements of the crime under which the particular petitioner was charged under Ohio Rev.Code § 2907.32. The jury was further read the specific definitions of "obscene material or performance," as contained in Ohio Rev.Code § 2907.01(F). The jury was also instructed that to convict the particular defendant it must find that the particular material or performance meets the three guidelines of *Miller*:

(a) whether the average person, applying contemporary community standards would find that the work, taken as a whole, appeals to the prurient interest;

(b) whether the work depicts in a patently offensive way, *sexual conduct spe-*

*cifically defined by the applicable state law*; and

(c) whether the work, taken as a whole, lacks serious literary, artistic, political, or scientific value.

*Miller v. California, supra,* 413 U.S. at 24, 93 S.Ct. at 2614 (emphasis added).

The so-called "*Miller* examples" were not included by any of the trial court judges in their instructions as illustrations of specific sexual conduct.[4] Ohio Rev.Code § 2907.01 specifically defines "sexual conduct."

As used in section 2907.01 to 2907.37 of the Revised Code:

(A) "Sexual conduct" means vaginal intercourse between a male and a female, and anal intercourse, fellatio and cunnilingus between persons regardless of sex. Penetration, however slight, is sufficient to complete vaginal or anal intercourse.

However, the respective juries received instructions including this definition in only two appeals, Appeal No. 80–3817 (Dalene Burgun) and Appeal No. 81–3127 (William Lee). Thus, although the juries were told

---

**3.** Ohio Rev.Code § 2907.32(A) provides in relevant part:

(A) No person, with knowledge of the character of the material or performance involved, shall do any of the following:

(1) Create, reproduce, or publish any obscene material, when the offender knows that such material is to be used for commercial exploitation or will be publicly disseminated or displayed, or when he is reckless in that regard;

(2) Exhibit or advertise for sale or dissemination, or sell or publicly disseminate or display any obscene material;

(3) Create, direct, or produce an obscene performance, when the offender knows that it is to be used for commercial exploitation or will be publicly presented, or when he is reckless in that regard;

(4) Advertise an obscene performance for presentation, or present or participate in presenting an obscene performance, when such performance is presented publicly, or when admission is charged;

(5) Possess or control any obscene material with purpose to violate division (A)(2) or (4) of this section.

(B) It is an affirmative defense to a charge under this section, that the material or performance involved was disseminated or

presented for a bona fide medical, scientific, educational, religious, governmental, judicial, or other proper purpose, by or to a physician, psychologist, sociologist, scientist, teacher, person pursuing bona fide studies or research, librarian, clergyman, prosecutor, judge, or other person having a proper interest in such material or performance.

(C) Whoever violates this section is guilty of pandering obscenity, a misdemeanor of the first degree. If the offender has previously been convicted of a violation of this section or of section 2907.31 of the Revised Code, then pandering obscenity is a felony of the fourth degree.

**4.** In addition to the three guidelines set forth by *Miller*, that decision, while not endeavoring to limit otherwise what conduct might be specifically defined by state law as "sexual," gave two permissible "examples":

(a) Patently offensive representations or descriptions of ultimate sexual acts, normal or perverted, actual or simulated.

(b) Patently offensive representations of masturbation, excretory functions and lewd exhibitions of the genitals.

*Miller v. California,* 413 U.S. 15, 25, 93 S.Ct. 2607, 2615, 37 L.Ed.2d 419 (1973).

that they were to find "sexual conduct specifically defined by state law," they were given no such specific definitions in four of six cases. Appeal No. 80–3743 (Turoso I); Appeal No. 80–3742 (Turoso II); Appeal No. 80–3796 (Turoso III); Appeal No. 80–3728 (Laura Spiker).

## II.

A certain amount of obfuscation, in our opinion unnecessary, has arisen, but this is due neither to the statute itself nor to the language of *Burgun* as contained in its syllabus. Rather, confusion arises from the body of the opinion in *Burgun* and from the jury instructions, which were impliedly approved by the affirmances of the appeals involved in *Burgun*.[5] There appears to have been a tendency in the jury instructions, both in the underlying state criminal trials here and in *Burgun,* to focus on the definition of "obscene" in subsection (F), without mention of the definition of "sexual conduct" in subsection (A). Indeed, the instructions to the jury in appeal No. 80–3742 (Turoso II) expressly refer to the "sexual conduct" requirement of the *Miller* guidelines as being that which the trial judge had just read from subsection (F). This misplaced emphasis could engender confusion. Those federal district judges who granted habeas relief could well have considered those instructions as an indication that the Ohio statute remained vague

and overbroad, despite the Ohio Supreme Court's alleged attempt to "authoritatively construe" it in a manner consistent with *Miller.*

■ Petitioners argue that the statute is vague and overbroad because of, rather than despite, the many specific definitions in the statute. The definition of "sexual conduct" in section 2907.01(A), *see ante* at 489, is only the first of many definitions included in section 2907.01. The others are:

(B) "Sexual contact" means any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or, if such person is a female, a breast, for the purpose of sexually arousing or gratifying either person.

(C) "Sexual activity" means sexual conduct or sexual contact, or both.

(D) "Prostitute" means a male or female who promiscuously engages in sexual activity for hire, regardless of whether the hire is paid to the prostitute or to another.

(E) Any material or performance is "harmful to juveniles," if it is offensive to prevailing standards in the adult community with respect to what is suitable for juveniles, and if any of the following apply:

(1) It tends to appeal to the prurient interest of juveniles;

---

**5.** The rule in Ohio is that the precedent in each case is to be found in the syllabus rather than in the text of the opinion. This rule has existed in some form for over 100 years. Rule VI, *Ohio S.Ct. Rule of Practice* provides:

> A syllabus of the points decided by the Court, in each cause, shall be stated in writing by the Judge assigned to prepare the opinion of the Court, which shall be confined to the points of law arising from the facts of the cause that have been determined by the Court.

94 Ohio St. *ix* (1916). Following citation of the rule, the Reporter for the Court indicated: On page *iii* of 6 Ohio State the reporter made the announcement, under date of August, 1857, but not as a rule adopted by the court:

> "The Judges desire it to be understood that their concurrence in the opinion of the judge who announces the decision of the Court is limited to that part which was necessary for the determination of the case upon the facts,

and the points of law arising therefrom; and, in general, the judges have endeavored to state those points in the syllabus of each case."

In the same announcement it is stated that volume 6 Ohio State reports was published before volume 5.

In volume 5, beginning on page *iii*, certain rules of court were adopted by the "Judges of the Supreme Court, *in the month of January, 1858,* pursuant to the provisions of the 601st section of the Code of Civil Procedure," included in which rules is the present Rule VI, that the syllabus states the points of law decided.

We thus refer to the syllabus of the opinion rather than its body in evaluating the Ohio Supreme Court's construction of the obscenity statute. For an interesting discussion of the syllabus rule, see *The True Story of the Ohio Syllabus Rule,* [1980] Y.B. 21 (Supreme Ct. Historical Soc'y).

(2) It contains a display, description, or representation of sexual activity, masturbation, sexual excitement, or nudity;

(3) It contains a display, description, or representation of bestiality or extreme or bizarre violence, cruelty, or brutality;

(4) It contains a display, description, or representation of human bodily functions of elimination;

(5) It makes repeated use of foul language;

(6) It contains a display, description, or representation in lurid detail of the violent physical torture, dismemberment, destruction, or death of a human being;

(7) It contains a display, description, or representation of criminal activity which tends to glorify or glamorize such activity, and which with respect to juveniles has a dominant tendency to corrupt.

(F) When considered as a whole, and judged with reference to ordinary adults [sic]. Or, if it is designed for sexual deviates or other specially susceptible group, judged with reference to such group, any material or performance is "obscene" if any of the following apply:

(1) Its dominant appeal is to prurient interest;

(2) Its dominant tendency is to arouse lust by display or depicting sexual activity, masturbation, sexual excitement, or nudity in a way which tends to represent human beings as mere objects of sexual appetite;

(3) Its dominant tendency is to arouse lust by displaying or depicting bestiality or extreme or bizarre violence, cruelty, or brutality;

(4) Its dominant tendency is to appeal to scatological interest by displaying or depicting human bodily functions of elimination in a way which inspires disgust or revulsion in persons with ordinary sensibilities, without serving any genuine scientific, educational, sociological, moral, or artistic purpose;

(5) It contains a series of displays or descriptions of sexual activity, masturbation, sexual excitement, nudity, bestiality, extreme or bizarre violence, cruelty, or brutality, or human bodily functions of elimination, the cumulative effect of which is a dominant tendency to appeal to prurient or scatological interest, when the appeal to such interest is primarily for its own sake or for commercial exploitation, rather than primarily for a genuine scientific, educational, sociological, moral, or artistic purpose.

(G) "Sexual excitement" means the condition of human male or female genitals when in a state of sexual stimulation or arousal.

(H) "Nudity" means the showing, representation, or depiction of human male or female genitals, pubic area, or buttocks with less than a full, opaque covering, or of a female breast with less than a full, opaque covering of any portion thereof below the top of the nipple, or of covered male genitals in a discernibly turgid state.

(I) "Juvenile" means an unmarried person under the age of eighteen.

(J) "Material" means any book, magazine, newspaper, pamphlet, poster, print, picture, figure, image, description, motion picture film, phonographic record or tape, or other tangible thing capable of arousing interest through sight, sound, or touch.

(K) "Performance" means any motion picture, preview, trailer, play, show, skit, dance, or other exhibition performed before an audience.

The heart of petitioners' argument is that, when obscenity is defined only with reference to subsection (F), the statute is capable of an unconstitutional application. For example, they claim the statute, as "authoritatively construed" would permit prosecutions for simple nudity,[6] as coming within the definition of obscene matter un-

---

**6.** This fear is exaggerated. The Ohio courts have recognized that nudity *per se* is not obscene. *See, e.g., City of Cincinnati v. Walton*, 76 Ohio Law Abs. 162, 3 Ohio Ops.2d 252, 145 N.E.2d 407 (1957); *State of Ohio v. Lerner*, 51 Ohio Law Abs. 321, 81 N.E. 282 (Hamilton County Common Pleas 1948).

der subsection (F)(2), or it would permit prosecution for depicting "extreme or bizarre violence" under subsection (F)(5), neither of which alone complies with the restrictions in *Miller.* Petitioners assert that, because the five subsections of subsection (F) are written in the disjunctive, there is no tie-in with the other subsections. Thus, a jury instructed in the way condoned in *Burgun* could find that the defendants were guilty as charged, even though it might not have believed that the material or performance involved met the tests of *Miller.*[7]

These claims have superficial appeal. However, it is unreasonable to consider only discrete sections of the statute in order to determine its validity. The statute must be read in its entirety and, as the Ohio Supreme Court so obviously intended, in *pari materia* with *Miller.*[8] Such a reading discloses that subsection (F) is but one of several requirements necessary to sustain a conviction. In addition to meeting one or more of the five requirements of section 2907.01(F), material must also depict or describe sexual conduct, contact, or activity within the meaning of section 2907.01(A)–(C).

Alternatively, the material at issue must both satisfy one or more of the definitions of section (F) and comport with one of the *Miller* examples in order to satisfy *Miller.* Although no jury in the underlying state criminal proceedings here was advised that specific sexual conduct included the *Miller* examples, the Supreme Court of Ohio appears to have construed the former and nearly identical obscenity statute to encompass the *Miller* examples. *See State ex rel. Keating v. Vixen,* 35 Ohio St.2d 215, 301 N.E.2d 880 (1973)[9] Moreover, the publish-

---

**7.** Alternatively, a jury discerning from the instructions that nudity is "sexual conduct" could find that the *Miller* test *is* satisfied if it views nudity as patently offensive and without redeeming value.

**8.** In our view, Judge Merritt's dissent completely misses the point of the majority decision here, in *Sovereign News v. Falke, supra,* and in the Ohio Supreme Court's decision in *Burgun.* That is, of course, that the First Amendment continues to protect expression in Ohio unless it falls within the permissible limits of *Miller v. California.* Judge Merritt's unhappiness, therefore, is of necessity with *Miller.* It has to be manifestly clear that whatever "conduct" the Ohio statute proscribes must perforce come within *Miller* or it is protected.

Judge Merritt's speculations concerning the fate of great works of art in Europe, under Ohio's statute are therefore without basis. Meanwhile, back in the Cleveland Municipal Court, the battle bears faint resemblance to that fought in the dissent. According to the evidence in *Turoso I,* for example, the following is part of an unchallenged description of an 8 mm. film which incurred the charges and brought about the conviction complained of in that appeal:

[P]articipants are two males and two females. One of the females is committing fellatio on the two males at the same time. [The movie] then shows the two males jacking off and the female lying down in front of them licking her lips. After a time one of the males ejaculates into her mouth and on the chin. The other female then licks the chin and kisses the above mentioned female. She then commits fellatio on the male that hasn't

ejaculated yet. While she is doing this the other males and female and [sic] playing with her vagina. The female then commits cunnilingus on her. Then the other male ejaculates into the mouth of the female. The two females then kiss and embrace again.

Appeal No. 80–3743 (Turoso I), Joint Appendix at 22.

**9.** The former statute provided that:

(A) Any material or performance is "obscene" if, when considered as a whole and judged with reference to ordinary adults, any of the following apply:
(1) Its dominant appeal is to prurient interest;
(2) Its dominant tendency is to arouse lust by displaying or depicting nudity, sexual excitement, or sexual conduct in a way which tends to represent human beings as mere objects of sexual appetite;
(3) Its dominant tendency is to arouse lust by displaying or depicting bestiality or extreme or bizarre violence, cruelty, or brutality;
(4) It contains a series of displays or descriptions of nudity, sexual excitement, sexual conduct, bestiality, or human bodily functions of elimination, the cumulative effect of which is a dominant tendency to appeal to prurient interest, when the appeal to such interest is primarily for its own sake or for commercial exploitation, rather than for a genuine scientific, educational, sociological, moral, or artistic purpose.

Section 2905.34(A) Ohio Rev.Code (1970) (current version at section 2907.01(F) Ohio Rev. Code (1974) ).

ed order of affirmance by our court in *Sovereign News, supra,* recognizes that those examples were adopted by reference in *Burgun,* a conclusion reached as well by Judge Thomas in his opinion in appeal No. 80–3696 (Turoso III).

As a result, a potential defendant has definite standards by which he can evaluate any material at issue. For example, one who finds himself charged with pandering obscenity by selling obscene material will first read section 2907.32(A)(2) for the essential elements of the offense. He can then refer to section 2907.01 for a definition of "obscene," or of any other term with a specific meaning under the statute. Knowing also that the Ohio Supreme Court has construed the statute as incorporating the guidelines of *Miller v. California,* he will know its three requirements must be proved *in addition* to the elements of obscenity listed in section 2907.01(F). Therefore, under the statute "as written and authoritatively construed," it is incumbent upon the prosecution to prove beyond a reasonable doubt that:

(a) The material depicts conduct which is sexual; that is, it depicts vaginal intercourse or any of the other explicit examples expressly set forth in the definition of sexual conduct in section 2907.01(A), or one of the two examples of such conduct as described in *Miller;*

(b) the sexual conduct depicted is obscene, as that term is expressly defined in section 2907.01(F)(1)–(5); *and*

(c) the material meets the three guidelines of *Miller,* in that (1) when taken as a whole and applying contemporary community standards, it appeals to the prurient interests of the average person; (2) it depicts or describes, in a patently offensive way, the sexual conduct specifically defined in section 2907.01(A) or in the examples of *Miller;* and (3) taken as a whole, it lacks serious literary, artistic, political, or scientific value.

The foregoing seems to us the most logical, natural and also literal construction of the Ohio statute, construed *in pari materia* with *Miller.* It is true that, taken alone, certain of the disjunctive definitions of "obscene" in section 2907.01(F) may appear to apply only to protected activity, such as simple nudity and violence. Similarly, it is possible that a reading of both *Miller* and the statute creates redundancies and surplusage. This result can be avoided in each particular case with careful jury instructions. More important, it is not for our court to determine that a better statute could be devised. Rather, it is our function to follow the Supreme Court's finding that state statutes dealing with obscenity can be upheld where their authoritative judicial construction has made them conform to *Miller. Miller, supra,* 413 U.S. at 24, n.8, 25, 93 S.Ct. at 2614, 2615; *Ward v. Illinois,* 431 U.S. 767, 97 S.Ct. 2085, 52 L.Ed.2d 738 (1977). Defendants can determine that the material must depict explicit sexual conduct as defined in the statute, that the sexual conduct must also meet one or more of the definitions of "obscene" in the Ohio statute, and that all three of the *Miller* guidelines must be met in order to convict him. Thus, there can be no prosecution for simple nudity, nor for violence or bizarre conduct alone. As a result, there can be no claim of overbreadth on that account, nor is the statute vague as leaving uncertainty.

### III.

As we have mentioned earlier, the instructions given in the underlying criminal prosecutions in the Cleveland Municipal Court varied in their form from that outlined above. All included a reading of the entire definition of "obscene" contained in section 2907.01(F); however, only two included a reading of the definition of "sexual conduct" contained in section 2907.01(A). None included the *Miller* examples.

In no case is it claimed that the particular material or performance did not, in fact, depict sexual conduct specifically included in the statutory definition. In fact, there is no claim that such an instruction (or indeed

any other definition which the particular case might appear to make desirable) was requested and refused. It is obvious to us that if a jury is advised that material must depict sexual conduct "specifically defined by applicable state law," good sense suggests that the specific definition be given. It is also apparent that if confusion existed, it was wholly avoidable by a straightforward application of the statute and of *Miller*. If such confusion had been seen as prejudicial by the defendants in the criminal proceedings, it could easily have been corrected or could have been made the subject of appropriate objection on appeal within the state system. It seems equally clear to us, from the graphic descriptions of the material involved, that these cases concern what is commonly known as hard core pornographical material. It so obviously fits within the appropriate definitions of "obscene materials" that any further or more explicit definitions could only have reinforced the likelihood of conviction. It is thus difficult to believe that any failure to object or to raise such issues before us was an oversight. Obviously, the petitioners here have realized that their best, and probably only effective, defense lay in persuading the courts that the statute was altogether void. Anything short of that finding would at best lead to a grant of a conditional writ, retrial under even less favorable but completely lawful instructions, and, once more, convictions.

In his written opinion filed in the appeal of Frank Turoso, Appeal No. 80-3696 (Turoso III), United States District Judge William K. Thomas noted that the jury instruction involved therein included neither the *Miller* "examples" nor the definition of "sexual conduct" of section 2907.01(A). *Turoso, supra*, at 838. Judge Thomas' observations explain both the nature of the problems in these appeals and the reason why they do not reach constitutional proportions. He indicates further that omissions in the jury instructions do not require holding the entire statute unconstitutional, the sole legal ruling sought here:

> In his recommended report, the magistrate noted that the court (Judge Calandra) did not define sexual conduct in terms of the two examples in *Miller* [413 U.S.], at p.25 [93 S.Ct. at p.2615], nor did the court define sexual conduct as it appears in Ohio Revised Code § 2907.01(A). The magistrate then concluded:
>
>> Since the court instructions did not define the sexual conduct to be restricted with the requisite specificity, the instructions were unconstitutionally overbroad. *Sovereign News Co., supra*, at p. 400.
>
> Thereupon he recommended that the petition for a writ of habeas corpus be granted.

Immediately before Judge Calandra gave his general instructions to the jury, he informed defense counsel that he would "charge the jury on the *Miller* case and the *Smith* case and the *Burgen (sic)* case." As the quoted portions of Judge Calandra's instructions indicate, he gave the jury the *Miller* guidelines. Following the completion of the general instructions, there was a discussion at the bench about several matters. At that time, defense counsel did not ask the judge to add the *Miller* "examples" to the court's instructions on the *Miller* guidelines. Thus defendant did not ask the court to give to the jury the *Miller* "examples." Moreover, defendant did not object to the giving of the *Miller* guidelines without the *Miller* "examples."

In *Henderson v. Kibbe*, 431 U.S. 145, 154–55, 97 S.Ct. 1730, 1736–1737, 52 L.Ed.2d 203 (1977), the Court reversed a decision of the Second Circuit wherein a divided panel had granted a state prisoner's petition for habeas corpus on the ground that a New York state trial judge's failure to instruct the jury on the issue of causation was constitutional error. The Court observed:

> Orderly procedure requires that the respective adversaries' views as to how the jury should be instructed be presented to the trial judge in time to enable him to deliver an accurate charge and to minimize the risk of committing reversible error. It is the rare

case in which an improper instruction will justify reversal of a criminal conviction when no objection has been made in the trial court.

The Court further noted that "an omission or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law." The Court announced the rule that is controlling here:

> The burden of demonstrating that an erroneous instruction was so prejudicial that it will support a collateral attack on the constitutional validity of a state court's judgment is even greater than the showing required to establish plain error on direct appeal. The question in such a collateral proceeding is "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process," *Cupp v. Naughten*, 414 U.S. [144] at 147 [94 S.Ct. 396, at 400, 38 L.Ed.2d 368], not merely whether "the instruction is undesirable, erroneous, or even 'universally condemned'."

*Id.*, at 146 [94 S.Ct., at 400].

This controlling rule of federal habeas corpus law differs from the magistrate's recommended ruling, isolating, as he did, the judge's instructions from the rest of the trial and determining that the court's instructions were unconstitutionally incomplete. However, the question in this federal habeas corpus proceeding is not whether Judge Calandra's instruction to the jury, *sans* a definition of "sexual conduct" in terms of the two examples in *Miller* [413 U.S.], at p.25 [93 S.Ct. at p.2615], nor ". . . as it appears in O.R.C. 2907.01(A)," rendered the "instructions . . . unconstitutionally overbroad." The question rather is whether the instruction without such definition of sexual conduct "so infected the entire trial that the resulting conviction violates due process." *Id.* at 838–839.

The foregoing comments apply with equal force to each of the appeals consolidated here, and no effort is made by the parties to assert any meaningful distinction between them individually. There is no evidence in petitioners' briefs or the records below that any trial was so tainted by a failure to instruct properly that due process was violated. Thus, habeas relief is unwarranted. *See Long v. Smith, Superintendent*, 663 F.2d 18, at 22–23 (6th Cir. 1981).

## IV.

The Ohio Supreme Court has authoritatively construed the statute to comport with the *Miller* requirements. It has thus made clear its commitment to the protection of First Amendment expression. Petitioners assert that the court's "authoritative construction" of the obscenity statute falls short of meeting the *Miller* standards, offering as evidence both the implicit approval of potentially defective jury instructions in *Burgun, supra*, and the alleged insensitivity to the *Miller* requirements in *State ex rel. Keating v. Vixen*, 35 Ohio St.2d 215, 301 N.E.2d 880 (1973).

It is sufficient for us to observe in closing what was recognized in *Miller*:

> If a state law that regulates obscene material is [limited to conform with *Miller* requirements], as written or construed, the First Amendment values applicable to the States through the Fourteenth Amendment are adequately protected by the ultimate power of appellate courts to conduct an independent review of Constitutional claims when necessary.

*Miller, supra*, 413 U.S. at 25, 93 S.Ct. at 2615. Although we may agree with the dissent that the language in *Vixen, supra*, is disturbing, that case is obviously not before us here. We have never conceived that a federal court's responsibility to protect freedom of expression under the First Amendment is discharged by mere lip service to any rule, however artfully crafted.

The judgments in appeals No. 80–3696 and 80–3817 are affirmed. The judgments in appeals No. 80–3743, 80–3742, 81–3127 and 80–3728 are reversed.

MERRITT, Circuit Judge, dissenting.

I agree with District Judges Manos and Aldrich that the Ohio obscenity statute is unconstitutional. Our Court treats this as

just another criminal statutory construction case and tries to perform radical surgery on the statute in order to save it and the state convictions based on it. But this is a statute outlawing speech and artistic expression; it requires a more sensitive reading of the First Amendment than our Court has given. Unlike the relatively healthy state statute saved in *Ward v. Illinois* by insertion of a *Miller* pacemaker, the heart of the Ohio statute in question here is malignant. A *Miller* pacemaker will not regulate it. If our Court's opinion stands as the law of obscenity, then all state obscenity statutes will be upheld as valid, no matter how broadly or specifically they censor protected speech, so long as the *Miller* standards are repeated to the jurors after they are instructed to apply the unconstitutional statute.

The Illinois statute in *Ward* was a general, single-shot provision outlawing material when "its predominant appeal is to prurient interest." The Ohio statute has more than thirty specific sections and subsections that cover the waterfront. The heart of the statute is section E with seven subsections and section F with five. Section E, relating to juvenile material, covers everything from "bizarre violence," "foul language," "physical torture" and "death" to "nudity" and "sexual excitement." Under Section F, and the jury instructions approved by our Court today, a defendant can be convicted of pandering adult obscenity and go to jail, for displaying or depicting "[1] sexual excitement or [2] nudity in a way which tends to represent human beings as mere objects of sexual appetite ... [or 3] bestiality or [4] extreme or bizarre violence, cruelty or brutality ... or [5] depicting human bodily functions of elimination in a way which inspires disgust or revulsion in persons with ordinary sensibilities ...." Ohio Rev.Code § 2907.01(F). "Bestiality" and other similar ideas are not defined but obscene "nudity" consists of "showing ... [1] male or female genitals, [2] pubic area, or [3] buttocks with less than a full, opaque covering or, [4] of a female breast with less than a full opaque covering of any portion thereof below the top of the nipple ...." Ohio Rev.Code § 2907.01(H). These provisions are the heart of the statute.

Under the statutory scheme and jury instructions approved by us today, Phidias and Praxiteles would be condemned not to a cup of hemlock, along with Socrates, but to languish in an Ohio jail along with the creators of most Greek statues of Aphrodite, Hermes, Apollo and the Satyrs. For these sculptors "displayed" genitals, buttocks and female breasts "below the top of the nipple" "with less than a full, opaque covering." The Parthenon frieze of Phidias has for over 2500 years withstood wind and storm and bombings and invasions by Persians, Spartans, Romans, Ottoman Turks and German artillery, but its marble nudity and magnificent depiction of "bizarre violence" could not withstand the onslaught of the righteous of Ohio. Michelangelo's ceiling twenty centuries later in the Sistine Chapel would now have to come down for the larger-than-life genitals and buttocks of Adam are clearly "displayed" as God reaches out his finger to instill life in the first man. The creation could not have taken place in Ohio.

Moreover, since relieving oneself of body fluid is also "obscene" in Ohio, the creator of the famous sculpture of the little boy in Brussels, who performs for all to see function # 1 in a pond, would unfortunately have to go to jail, and the little boy of bronze, in order to escape the sledge hammer of the godly, would have to place over his genital region not merely a fig leaf but nothing less than a "full opaque covering." The Pope would even have to remove from Ohio the Vatican Museum with its many fearsome statues, friezes and pictures showing "bestial" and "bizarre" battles of an extremely violent nature between animals and animal-like humans.

If you believe that all this is a dissenter's exaggeration and that the authorities in Ohio would not really countenance under this statute the suppression of such works of art, I admonish you to read *State of Ohio ex rel. Keating v. "Vixen,"* 35 Ohio St.2d 215, 301 N.E.2d 880 (1973), the response of the Ohio Supreme Court to the action of the

United States Supreme Court, 413 U.S. 905, 93 S.Ct. 3033, 37 L.Ed.2d 1016 (1973), vacating the state court's earlier decision in 27 Ohio St.2d 278, 272 N.E.2d 137 (1971), in light of *Miller*. The state court, purporting to apply post-*Miller* standards, finds the film in question obscene under the statute after describing it as follows:

> The principal character, Vixen, is a buxom young wife, whose 'square' husband is a combination pilot and fishing guide in the wilderness of British Columbia. His work keeps him away from their home for extended periods of time. Among the other characters are Vixen's motorcycle hood brother, a Canadian Mountie, with whom Vixen passes the first few minutes of the film, a vacationing couple who are guest-clients of the husband, a black American whom Vixen despises and who has fled the country to avoid the draft, and an Irish communist who attempts at gun-point to force Vixen's husband to fly him to Cuba. The first four are objects of Vixen's lechery.
>
> The movie is approximately 70 minutes long, out of which approximately one-half deals with incest, adultery, and lesbianism, which are graphically portrayed through facial and bodily expressions indicative of orgasmic reaction. The remaining one-half of the movie leads the viewer through such contemporary issues as racism, anti-militarism, communism and airplane hijacking. *It should be noted that, although the players are frequently shown nude and at full length, at no place are their genital parts exposed to the leering lens of the camera.* (Emphasis added.)

272 N.E.2d at 139. Although this movie may not be a work of art, it is far from hard core pornography.[1] On the next page of the opinion, the Ohio Supreme Court explains that just one sex scene would make even "The Sound of Music" obscene and subject to prior injunctive restraint:

> Assume, hypothetically, that the main character in 'The Sound of Music' per-

forms during one scene, an act of sexual lewdness, could we permit that part of the film to go unregulated merely because the producer had an 'eye on the recent Supreme Court rulings?' The question supplies its own answer.

In the end, however, the situation is not touched with much humor. Books are being confiscated and people going to jail for speech under a statutory scheme that clearly and patently contravenes the First Amendment. As District Judges Manos and Aldrich state so cogently, all the Supreme Court of Ohio has done is simply add the *Miller* standards as a new, alternative method of sending people to prison while leaving in effect alongside it the old unconstitutional method outlawing graphic expression of "sexual excitement," "nudity," "bizarre violence" and "human bodily functions." It is impossible to tell in these cases whether the jury convicted and the Ohio courts imprisoned the defendants because they violated the old unconstitutional statutory provisions or the new *Miller* standards. The juries in these cases were given all of the alternatives in the disjunctive and were not required to state which of the several standards they applied.

Our system of criminal justice cannot live with the underlying principle enunciated today in this case by our Court: a man's conviction for speech is valid under a patently unconstitutional law so long as the state could, theoretically, have repealed the old law and drafted another, more narrow, valid statute that proscribes the same speech. Our system cannot live with this principle because it violates due process and creates the offense ex post facto. The opinion of the court also violates principles of federalism. We have the authority to review and declare invalid state laws which abridge the First Amendment, but we are not authorized to repeal their statutes and reenact them to suit ourselves. And even more to the point, if we are going to presume to enact new laws for the states rath-

---

1. In *Miller*, the court said: "Under the holdings announced today, no one will be subject to prosecution for . . . obscene materials unless these materials depict or describe patently offensive 'hardcore' sexual conduct specifically defined. . . ." 413 U.S. at 27, 93 S.Ct. at 2616.

er than simply review judicially the ones they have, we should at least enact valid laws for them. The one we have pieced together here still outlaws nudity, bizarre violence, foul language, torture, death and the "glorification" of sex and many other materials protected by the First Amendment. It violates the basic principle laid down in *Cohen v. California*, 403 U.S. 15, 26, 91 S.Ct. 1780, 1788, 29 L.Ed.2d 284 (1971) that the First Amendment protects the "emotive function" as well as "cognitive content" and the principle that First Amendment protection of artistic materials is "not lessened by the fact that they are designed to entertain as well as inform." *Joseph Burstyn, Inc. v. Wilson*, 343 U.S. 495, 72 S.Ct. 777, 96 L.Ed. 1098 (1952).